[No. 13839-9-III.   Division Three.   August 1, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL WILLIAM CRIDER, *Appellant*.

---

*Jeffrey D. Cohen*, for appellant.

*James Kaufman, Prosecuting Attorney*, and *Darla C. Grose, Deputy*, for respondent.

SCHULTHEIS, J. — After pleading guilty to one count of second degree child rape, Michael Crider was sentenced to a standard range term of fifty-one months. Mr. Crider contends the State breached the plea agreement and he was denied his right of allocution. We vacate the judgment and remand for resentencing.

On August 27, 1993, Mr. Crider was charged with child rape in the second degree. He struck a plea bargain, the most crucial feature of which is that the prosecution would recommend a Special Sexual Offender Sentencing Alternative (SSOSA) if the presentence report supported such a recommendation. RCW 9.94A.120(7).[1] The report urged SSOSA treatment. So did the sexual deviancy evaluator the parties stipulated to as well as the therapist who was treating Mr. Crider. At sentencing, the State presented testimony from Jack Lien, the Director of the Juvenile Court Services, to establish that Mr. Crider's criminal history was perhaps understated in the presentence report. Mr. Crider had been on probation in connection with other incidents committed as a juvenile. Mr. Lien testified that contrary to an indication in the report, Mr. Crider was not

---

[1] A SSOSA contemplates imposition of a standard range sentence, suspension of same, and a treatment program geared to curb sexual deviancy together with tailored activity restrictions designed to protect the community while treatment is underway. As a condition of suspension, the court may impose a term of punitive confinement not to exceed six months. The program is available only to first-time sex offenders.

previously arrested for fourth degree assault, but for child rape. His assault conviction resulted from bargaining down the rape charge. Mr. Lien also observed that Mr. Crider violated the terms of his supervision on several occasions by consorting with teenage girls resulting in "a couple young ladies [being] referred to counseling." For reasons unknown, these incidents did not result in revocation proceedings.

The prosecutor argued as follows:

As the Court may remember, pursuant to the plea negotiation we are not in a position to make a recommendation for anything other than the SSOSA option if, in fact, the treatment providers and the PSI did make that recommendation, and they both have. So we join in that recommendation and ask the Court to grant a SSOSA sentence.

In rebuttal, the prosecutor also commented:

And the only other thing I will say, Your Honor, is that in considering the sentence in this case, you haven't heard from the victim, and I'm sorry that she wasn't able to be here today, but would remind the Court that for this victim, this was her first sexual experience and it was one of fear and coercion, and she'll have to live with that for the rest of her life.

The court rejected the SSOSA option and imposed fifty-one months, the low end of the standard range. The court concluded the presentence report established at least three class A felony rapes: the instant offense, the bargained down charge and one which did not result in charges. The court observed "there are a number of other victims out there" who had not come forward to press charges. From a public safety standpoint, the court was concerned that Mr. Crider employed coercion against young girls.

Clearly, in this case we have repeated offenses where Mr. Crider, in effect, preyed upon young girls 13, 14 years old, defenseless both by their physical stature and their emotional development. Clearly used threats. We're not talking about someone who just talked them into it.

At the conclusion of proceedings, Mr. Crider moved to withdraw his plea on the basis that the State's production

of Mr. Lien's testimony undercut the spirit of the plea bargain. The court denied the motion and entered judgment. Immediately thereafter, Mr. Crider filed a notice of appeal and counsel noted it was based on the court's failure to offer him an opportunity for allocution. The court asked Mr. Crider if he wished to say anything. Counsel protested that this was "a totally empty gesture at this point." Nonetheless, Mr. Crider briefly addressed the court. The court was not swayed.

█ Standing alone, the prosecutor's comments connote a certain equivocation. See *In re Palodichuk*, 22 Wn. App. 107, 110-11, 589 P.2d 269 (1978) (recommendation accompanied by a reservation may breach plea agreement). Taken in context, however, argument focused on the length of time Mr. Crider would serve as a condition of a SSOSA sentence. The State reserved the right to argue for six months and strenuously urged that result. Mr. Crider suggested thirty days. Consistent with the terms of the plea bargain, the State was entitled to show reasons why six months was an appropriate term of confinement. Those reasons might have had the spillover effect of also showing why a SSOSA sentence would be inappropriate, but the record does not support Mr. Crider's contention that the prosecutor expressed ambivalence. On the contrary, the prosecutor opened her remarks by noting how narrow the issues were:

> Your Honor, I think that to simplify the State's position in this matter, I know that Your Honor has had an opportunity to review the voluminous reports that have been provided and know what the recommendations are. I can say that the State's recommendation is in conjunction with the Presentence Investigation recommendation with one exception and that is regarding confinement time.

This is exactly how defense counsel understood the issue. He stated "I guess the main question here is the amount of time to be served and what the purposes are in serving that time." The prosecutor fairly presented the terms of the plea agreement and made the recommendation promised without equivocation. This is all that is

required. *State v. Coppin*, 57 Wn. App. 866, 873-74, 791 P.2d 228, *review denied*, 115 Wn.2d 1011 (1990).

Turning to Mr. Lien's testimony, the defense did not object to his being called, nor object to any specific question. Mr. Lien did not criticize the presentence recommendation nor offer one of his own. His concerns were fourfold: (1) the presentence report erroneously recited that Mr. Crider "was arrested for and convicted of Fourth Degree Assault" when in fact he was arrested for rape; (2) he believed Mr. Crider minimized the gravity of his conduct; (3) did not take probation seriously; and (4) he felt someone should speak on behalf of the victim. The trial judge shared several of these concerns, but at the same time downplayed the import of Mr. Lien's testimony.

> I think I could probably — reading all the reports probably figure it out by myself. He wasn't arrested for Assault in the Fourth Degree, he was arrested for Rape of a Child in the Second, which following some plea negotiations apparently he ended up pleading to a lesser charge of Fourth Degree Assault.

No doubt anyone reading the presentence report could "figure it out." The expansive report incorporates the findings of Pamela Aden, the evaluation expert the parties stipulated to, and Lorelei Zickler, a polygraph examiner. Based on Mr. Crider's own account, these reports evidence an active sex life with the emphasis on girls barely into their teens. Mr. Crider's sexual activity prior to age sixteen was unremarkable, but over the ensuing two years he had intercourse with fourteen girls between the ages of thirteen and nineteen. How many of these were statutory rapes cannot be ascertained because the record lacks precise data regarding ages, but at least five of these contacts potentially qualify as rapes. Mr. Lien's testimony was cumulative and added nothing to the damage done by the presentence report, which was not challenged by the defense in any respect. *See* RCW 9.94A.370(2) (real facts doctrine).

Mr. Crider next contends his right to allocution was breached. The scope of the right depends on its source. Mr. Crider's reliance on federal cases as direct authority

is largely misplaced because the federal rule is exacting in its mandate. "Before imposing sentence, the court must . . . address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence." Fed. R. Crim. P. 32(c)(3). The failure to follow this procedure is reversible error. *Green v. United States*, 365 U.S. 301, 304, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961) (plurality).[2] In Washington, the process is less precise in its requirements. The survey begins with former RCW 10.64.040: "When the defendant appears for judgment, he must be informed by the court of the verdict of the jury, and asked whether he have any legal cause to show why judgment should not be pronounced against him."

The statute was repealed in 1984. Laws of 1984, ch. 76, § 33. As a practical matter, RCW 10.64.040 had been without effect for more than a decade prior to repeal because it was superseded by former CrR 7.1(a)(1), 82 Wn.2d 1159-60 (1973). The rule provided: "Before disposition the court shall afford counsel an opportunity to speak and shall ask the defendant if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment." This language is virtually identical to Fed. R. Crim. P. 32 and the construction placed on that rule by federal courts was adopted in Washington. *State v. Happy*, 94 Wn.2d 791, 793-94, 620 P.2d 97 (1980). A defendant's right to speak was absolute and trial courts must "unambiguously address themselves to the defendant. Hereafter trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing." *Happy*, 94 Wn.2d at 793 (emphasis omitted) (quoting *Green*, 365 U.S. at 305). With the advent of the Sentencing Reform Act of 1981 (SRA),

[2]The requirement that the court "address the defendant personally" was added in 1966 in response to *Green*. When *Green* was decided, the rule provided " 'Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment.' " *Green*, 365 U.S. at 303 n.1 (quoting former Fed. R. Crim. P. 32(a)).

CrR 7.1 was rewritten in 1984 and recodified at CrR 7.2 with the allocution provision eliminated. *See* 101 Wn.2d 1115-16 (1984); *State v. Melos*, 42 Wn. App. 638, 640 n.2, 713 P.2d 138, *review denied*, 105 Wn.2d 1021 (1986). Allocution is once again statutory in nature.

> Before imposing a sentence upon a defendant, the court shall conduct a sentencing hearing . . . . The court shall . . . allow arguments from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer as to the sentence to be imposed.

RCW 9.94A.110.

■ The scope of what a defendant may offer has been broadened over the years from "legal cause" in former RCW 10.64.040, to "information in mitigation" in former CrR 7.1(a)(1) to "argument" in the existing statute. At the same time, the procedural safeguards have arguably narrowed. Allocution must be allowed in a sentencing hearing which must be held prior to imposition of sentence, something which did not occur here. The remaining question, apparently of first impression, is whether a trial judge discharges his mandatory duty to allow allocution by shifting to the defendant the burden of requesting it.

■■ When the Legislature strips the citizenry of a common law right, it must do so unambiguously. "[I]n the absence of an indication from the Legislature of an intention to overrule the common law, new legislation will be presumed consistent with prior judicial decisions." *State v. Bushnell*, 38 Wn. App. 809, 811, 690 P.2d 601 (1984); *accord In re Williams*, 115 Wn.2d 202, 208, 796 P.2d 421 (1990). Allocution is a common law right.

> The design of Rule 32(a) did not begin with its promulgation; its legal provenance was the common-law right of allocution. As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal. Taken in the context of its history, there can be little doubt that the drafters of Rule 32(a) intended that the defendant be personally afforded

the opportunity to speak before imposition of sentence. We are not unmindful of the relevant major changes that have evolved in criminal procedure since the seventeenth century—the sharp decrease in the number of crimes which were punishable by death, the right of the defendant to testify on his own behalf, and the right to counsel. But we see no reason why a procedural rule should be limited to the circumstances under which it arose if reasons for the right it protects remain. None of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.

*Green*, 365 U.S. at 304 (citation omitted).

Significantly, the version of Fed. R. Crim. P. 32 considered by *Green* parallels RCW 9.94A.110 in that both require the court to allow a defendant to speak and neither provides a procedure whereby the defendant will be apprised of this right. *See supra* note 2. The whole point of *Green* was to read into Fed. R. Crim. P. 32 as a matter of common law the requirement that the court personally address the defendant and inquire. On this point, the majority and the dissent in *Green* agree.

I agree too that the governing legal question in determining whether such an opportunity has been afforded under Rule 32(a) is "whether the trial judge did address himself to the defendant personally," since it would be wholly artificial to regard this opportunity as having been afforded in the absence of a specific and personal invitation to speak from the trial judge to the defendant.

*Green*, 365 U.S. at 307 (Black, J., dissenting).

The only indication from the Legislature of an intention to overrule the common law lies in the failure to include in RCW 9.94A.110 the requirement that the defendant be personally addressed by the court. Facially, this omission appears to be a weighty indicator. However, the enactment of the statute must be viewed in the context of historical events. Although not effective until July 1, 1984, RCW 9.94A.110, together with the balance of the

SRA, was enacted on May 14, 1981. Laws of 1981, ch. 137. Former CrR 7.1(a)(1) was not repealed until three years later on May 25, 1984 with the effective date of the repealer July 1, 1984, to coincide with the effective date of the SRA. *See* 101 Wn.2d 1108 (1984). It was well settled when the SRA was enacted that former CrR 7.1 controlled over the provisions of former RCW 10.64.040. *Happy*, 94 Wn.2d at 792; former CrR 7.1 cmt., 82 Wn.2d at 1160. This is so because when rules of court collide with statutes, the rules prevail. *Washington State Bar Ass'n v. State*, 125 Wn.2d 901, 909, 890 P.2d 1047 (1995). The Legislature could not have intended to supplant former CrR 7.1(a)(1) because it was not within its power to do so. Nor could the Legislature have foreseen that three years later, our Supreme Court would repeal CrR 7.1(a)(1). So viewed, the sixth sentence in RCW 9.94A.110 was never intended to be procedural in nature and certainly could not have been intended to narrow the common law right of allocution. In fact, there is no reason to believe the Legislature intended *any* change in the law with respect to a defendant's right of allocution. Rather, the manifest legislative intent was to simply add to the list of persons entitled to address the court with the procedural mechanism governing allocution by a defendant found in former CrR 7.1(a)(1). When the rule was repealed, that left only an inconclusive statute and the common law as enunciated in *Green,* which in turn was endorsed in *Happy*.

The net result is that there is no evidence of legislative intent to diminish the right of allocution. The only evidence is to the contrary because the Legislature may be presumed to have been aware of former CrR 7.1 when enacting the SRA. Nor is there any evidence of the Supreme Court's intent in repealing former CrR 7.1(a)(1). The relevant comment recites in its entirety that: "The prior rule, CrR 7.1, is adopted as CrR 7.2. In section (a), the added language is suggested by Minn. R. Crim. P. 27.03. The deleted language addressed matters that are now covered in more detail in RCW 9.94A.110." CrR 7.2 cmt. As related to all those entitled to address the sentenc-

ing court in addition to defendants, it is true the statute covers the topic in more detail. With respect to defendants, it is not true. If the Legislature adopted RCW 9.94A.110 knowing that former CrR 7.1(a)(1) would control over its provisions, and if the rule was repealed in deference to the statute, but with knowledge that the Legislature enacted the statute to operate in conjunction with the rule, then nothing has changed. "Allowing" allocution means soliciting a statement from the defendant prior to imposition of sentence, just as it did when RCW 9.94A.110 was enacted and just as it has for the past 300 years. Any other conclusion would mean that legislative intent was subverted three years after its formation by judicial fiat.

■■ The State questions whether Mr. Crider's standard range sentence is appealable in light of RCW 9.94A.210(1), which provides that "A sentence within the standard range for the offense shall not be appealed." This stricture is ameliorated by the rule that the procedure whereby a standard range sentence was imposed is appealable. *State v. Ammons*, 105 Wn.2d 175, 183, 713 P.2d 719, 718 P.2d 796 (dicta), *cert. denied*, 479 U.S. 930 (1986). Nonetheless, the State's contention finds support in *State v. Mail*, 121 Wn.2d 707, 711-12, 854 P.2d 1042 (1993):

> To determine what was meant by "procedure," it is appropriate to refer to the act that *Ammons* was construing — the SRA itself. The SRA is the sole statutory source of sentencing authority. Therefore, we must look to this statute to determine exactly what procedures are required in imposing this standard range sentence.
>
> . . . .
>
> In sum, we now hold that in order for a "procedural" appeal to be allowed under *Ammons*, it must be shown that the sentencing court had a duty to follow some specific procedure required by the SRA, and that the court failed to do so. Without such a showing, the clear rule of RCW 9.94A.210(1) applies and the appeal will be denied.

The only SRA provision germane to allocution is RCW 9.94A.110 which mandates that a "court shall . . . allow arguments from . . . the offender." The SRA contains no

specific procedural provision effectuating this right. A defendant who requested allocution and was denied the opportunity could appeal because he has a statutory right, and perhaps a due process right, to allocution. *In re Powell*, 117 Wn.2d 175, 200, 814 P.2d 635 (1991).[3] But under *Mail*, a defendant who did not ask for an opportunity to speak because he was unaware of the right is without recourse. Given a stringent reading, *Mail* precludes this appeal.

The question is how "specific" a procedure must be. If confined to the express terms of the statute, the SRA confers the right of allocution, but contains no enforcement mechanism. Read in light of the common law and the statutory history of RCW 9.94A.110, however, the procedure is implicit in the right. "[I]t would be wholly artificial to regard this opportunity as having been afforded in the absence of a specific and personal invitation to speak from the trial judge to the defendant." *Green*, 365 U.S. at 307 (Black, J., dissenting). By definition, the procedure inheres in the term "allocution."

> Formality of court's inquiry of defendant as to whether he has any legal cause to show why judgment should not be pronounced against him on verdict of conviction; or, whether he would like to make statement on his behalf and present any information in mitigation of sentence.

*Black's Law Dictionary* 76 (6th ed. 1990).

■ The State urges any error was harmless. Mr. Crider was given an opportunity to speak. The trial judge listened, understood the presentation, and responded by noting what he perceived to be deficiencies in Mr. Crider's

---

[3]*Powell* apparently elevated the right of allocution to a constitutional level with its reference to due process. If so, a constitutional challenge to a standard range sentence is not barred by *Mail*. *Mail*, 121 Wn.2d at 712-13. However, this premise is most doubtful, at least as a matter of federal law. *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962). Some jurisdictions have found a constitutional foundation for allocution in their own charters. *See generally State v. Chow*, 77 Haw. 241, 246-51, 883 P.2d 663 (Ct. App. 1994) (comprehensive survey). Because our disposition is based on statutory construction, there is no need to consider whether the right to allocution is of constitutional dimension under Washington law.

appreciation of the severity of his conduct and its effect on his victims. The court was more interested in punishment for Mr. Crider than treatment. It is clear the court thought six months, the maximum term allowable under SSOSA, was inadequate punishment. It is unlikely anything Mr. Crider might have said, no matter how much "halting eloquence" might be mustered, would have changed this feature. However, we agree with Mr. Crider that an opportunity to speak extended for the first time after sentence has been imposed is "a totally empty gesture." Even when the court stands ready and willing to alter the sentence when presented with new information (and we assume this to be the case here), from the defendant's perspective, the opportunity comes too late. The decision has been announced, and the defendant is arguing from a disadvantaged position. *See State v. Chow*, 77 Haw. 241, 246, 883 P.2d 663 (Ct. App. 1994). Offering a defendant the opportunity to address the court prior to passing sentence should be a rote exercise at every sentencing. It should be a mechanical act so routine as to require no thought. Applying harmless error in the face of a total failure of allocution prior to imposition of sentence would severely erode a right which the State concedes to be fundamental. *Cf. State v. Delange*, 31 Wn. App. 800, 802-03, 644 P.2d 1200 (1982) (harmless error may apply when sentence has not yet ripened into formal judgment). Harmless error has no allure when the burden on a sentencing court in offering allocution is so minimal and the adverse effect on a defendant so potentially impactive.

Vacated and remanded for resentencing.

We do not doubt the sentencing judge's ability to set aside his previously expressed views and resentence as though the prior proceedings had not occurred. The appearance of fairness, however, suggests the advisability of conducting further proceedings before a substitute judge. *Chow*, 883 P.2d at 673 n.13.

THOMPSON, C.J., concurs.

SWEENEY, J. (dissenting) — The current right of allocu-

tion is spelled out in the Sentencing Reform Act of 1981: "Before imposing a sentence upon a defendant, the court shall conduct a sentencing hearing. . . . The court shall . . . allow arguments from the . . . offender . . . ." RCW 9.94A.110. Whether Michael Crider was denied that right to allocution is questionable. But even if he was, any error was harmless. I therefore respectfully dissent.

Before he sentenced Mr. Crider, the judge read a lengthy letter from him, addressed specifically to the judge, outlining his troubled childhood, problems in his relationships with family members and with alcohol, and his plans for the future, which included more education. Immediately following the sentencing hearing, Mr. Crider filed a notice of appeal assigning error to the court's failure to afford an opportunity for allocution. Given the timing and grounds for the appeal, Mr. Crider apparently knew of his right of allocution but chose to remain silent. The court then offered to let him speak. His lawyer protested that the court's gesture was an idle one. Mr. Crider responded nonetheless: "All I'd like to say is I'm sorry for hurting everybody that I've hurt in my whole lifetime, the girls especially, my parents, and everybody that's been around me. About my school, I'm really excited about that, and that treatment program, I'm excited about that. Again, I'm real sorry for what I did to those girls, and all that."

To conclude that Mr. Crider was denied his right to allocution and further that the denial was prejudicial places form above substance. It is the kind of technical argument the doctrine of harmless error was developed to eliminate. *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (the purpose of the harmless error rule is to prevent setting aside convictions for small errors or defects that have little, if any, likelihood of changing the result of the trial); *State v. Wanrow*, 88 Wn.2d 221, 237, 559 P.2d 548 (1977) (a harmless error is one which is trivial, formal or merely academic and which affects in no way the outcome of the case). Even basic constitutional rights are subject to the harmless error analysis. *See, e.g.,*

*State v. Aumick*, 126 Wn.2d 422, 430, 894 P.2d 1325 (1995) (failure to instruct jury as to every element of a crime); *State v. Lane*, 125 Wn.2d 825, 839, 889 P.2d 929 (1995) (trial judge's comment on the evidence); *State v. Buss*, 76 Wn. App. 780, 789, 887 P.2d 920 (1995) (denial of right to cross-examine witness).

It is apparent from his attorney's comments following sentencing that Mr. Crider was aware of his right of allocution; he simply was not informed of that right by the court. When provided with an opportunity to address the court, he with "halting eloquence" did so. *Green v. United States*, 365 U.S. 301, 304, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961) ("The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself."). The trial judge had also reviewed the letter written by Mr. Crider himself, which set out, in his own words, mitigating factors for his crime, including his troubled family history and his earnest commitment to work at rehabilitation. Although the judgment had already been signed, it had not been entered and the judge could have withdrawn it after Mr. Crider's statement. *See State v. Dana*, 59 Wn. App. 667, 670, 800 P.2d 836 (1990) (trial court retains jurisdiction over the sentence until it is entered).

Remand here is, in my judgment, an unfortunate waste of judicial resources. This court can and has refused to remand for resentencing where announced grounds for an exceptional sentence are invalidated. *See, e.g., State v. Baucham*, 76 Wn. App. 749, 753, 887 P.2d 909 (1995) (exceptional sentence affirmed even when all but one of the trial court's reasons for the sentence were invalidated); *State v. Negrete*, 72 Wn. App. 62, 70-71, 863 P.2d 137 (1993) (no remand for sentencing even though two of three reasons for imposing exceptional sentence were invalid), *review denied*, 123 Wn.2d 1030 (1994). It seems to me that the situation here is directly parallel.

I would conclude that any technical denial of Mr. Crid-

er's right of allocution was harmless and affirm the sentence of the trial court.