FILED
COURT OF APPEALS
DIVISION II

2015 JUL 28 AM 8: 25

STATE OF WASHINGTON
BY
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46066-1-II |
| Respondent, | |
| v. | |
| DONNELL WAYNE PRICE, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Donnell Wayne Price appeals the reimposition of his exceptional sentence during resentencing. He argues that the trial court erred by imposing an exceptional sentence based on an aggravating factor not properly found by the jury and that it violated his right of allocution by imposing sentence before allowing Price to speak. We disagree. Price did not preserve for review the validity of the special verdict instruction and any violation of Price's right of allocution was harmless. We affirm the exceptional sentence but remand for the ministerial correction of scrivener's errors in the judgment and sentence.

## FACTS

In 2006, the State charged Price with murder in the first degree while armed with a firearm and unlawful possession of a firearm in the second degree. The State also alleged that the murder was a crime of domestic violence, during which Price's conduct manifested either deliberate cruelty or intimidation of the victim.

In 2007, a jury found Price guilty as charged and returned special verdicts finding that he committed the murder while armed with a firearm and that his conduct manifested intimidation of the victim.[1] The trial court imposed an exceptional sentence that added 60 months for each of the

---

[1] The jury did not find that Price acted with deliberate cruelty.

two special verdicts, for a total sentence of 494 months. The trial court entered written findings of fact and conclusions of law to support the exceptional sentence.

Price appealed and the resulting decision set forth the facts supporting his convictions:

> On September 3, 2006, Olga Carter called 911 to report a domestic violence incident involving her boyfriend, Donnell Price. Carter told the 911 operator that Price had a gun. Police responded and arrived at Price's home in Tacoma.

> When the officers approached the house, they heard a man and woman arguing inside and then heard the man say something about flashing lights outside. They then saw Price come to the door and step outside. An officer shined his flashlight on him and announced "Tacoma Police," but Price went back inside and slammed the door shut.

> A few seconds later, the police heard a woman scream. Officers quickly approached the front and back doors and demanded that the occupants come out. When there was no response, they kicked in the front door and then heard a gunshot. The officers then continued to announce their presence and to call on the occupants to come out of the house, but there was no response. Price eventually came out through the front door after repeated police demands.

> Police then entered the house and found Carter dead on the floor in the utility room. On a nearby table, police also found a handwritten note that contained Carter's fingerprints, was in her handwriting, and was on paper torn from a notebook in her purse. The note read:

> > To AuBriana
> > From: Olga Mommy
> > Mommy Luv
> > Mr. Price
> > Shot Me
> > Dead
> > He thought
> > I Fooled Around
> > A Gun
> > to my
> > Head.

> Carter had a daughter named AuBriana.

> An autopsy confirmed that Carter died of a single gunshot wound. The fatal wound was a contact gunshot wound to her neck. Forensic evidence indicated that the gun had been placed against her neck pointed upward and that the bullet travelled through her throat, cervical vertebrae, spinal cord, and brain. Forensic

2

evidence also showed that Price had gunpowder burns on his shirt and chest, indicating that he was holding Carter very close to him when the shot was fired.

*State v. Price*, noted at 153 Wn. App. 1038, 2009 WL 3260914, at *1; *see also* Clerk's Papers (CP) at 37-39.

The *Price* court rejected the two issues raised on appeal: Price's assertions that the trial court violated his right to a public trial and erred by admitting the victim's handwritten note. 2009 WL 3260914, at *3-5; *see also* CP at 43, 47.

In 2011, Price filed a personal restraint petition and challenged the wording of his special verdict instruction, the validity of his offender score, and the seriousness levels listed in his judgment and sentence.[2] Price argued that his prior convictions washed and were not properly part of his offender score. We rejected Price's claim of instructional error but granted the petition in part and remanded for resentencing so that the State could "provide all relevant documentation to prove Price's criminal history and resulting offender score." CP at 84 (Order Granting Petition in Part in Case No. 42646-3-II, filed Oct. 9, 2012). We also remanded for correction of the erroneous seriousness levels listed for each offense in the judgment and sentence. *See* CP at 85 (Order in Case No. 42646-3-II).

A new judge presided over the resentencing hearing because the original judge had retired. The trial court granted defense counsel's motion to withdraw and continued the hearing to allow for the appointment of assigned counsel. When the hearing reconvened, the trial court summarized its understanding of the issues before it:

---

[2] Price's instructional challenge was based on *State v. Bashaw*, 169 Wn.2d 133, 234 P.3d 195 (2010), which the Washington Supreme Court overruled in *State v. Nunez*, 174 Wn.2d 707, 285 P.3d 21 (2012). He has filed two other petitions that we have dismissed. *See* Order Dismissing Petition, *In re Pers. Restraint of Price*, No. 43697-3-II (Wash. Ct. App. Oct. 4, 2012); Order Dismissing Petition, *In re Pers. Restraint of Price*, No. 47380-1-II (Wash. Ct. App. Mar. 4, 2015).

> As I understand it from the Court of Appeals' decision . . . [the case] was . . . remanded to review the offender score and just sentencing if the offender score was wrong, as I understand it, and the issue being whether some prior offenses that Mr. Price had had washed.

Report of Proceedings (RP) at 14.

During the hearing, it became apparent that the prosecutor needed an additional document to establish Price's offender score. Before continuing the hearing, the trial court allowed three members of the victim's family to speak.

When the resentencing hearing resumed, the trial court determined that the State's evidence supported the previously calculated offender score of four. After two other members of the victim's family gave statements, the prosecutor outlined some of the facts of the crime that had been revealed at trial. The prosecutor argued that the trial court should impose the same sentence that Price received in 2007.

The defense responded by directing the trial court's attention to the special verdict form that had supported the "intimidation of the victim" aggravating factor. That verdict form provided:

> We, the jury, having found the defendant guilty of Murder in the First Degree or Murder in the Second Degree, return a special verdict by answering the following question from the court:
> **QUESTION:** During the commission of this offense, did the defendant's conduct manifest intimidation of the victim?

CP at 10. Defense counsel argued that this form showed that the jury had not found that the murder was a crime of domestic violence, which was required to support the aggravating factor in question. As a consequence, counsel maintained that the trial court could not reimpose an exceptional sentence without violating Price's rights under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

The prosecutor argued that the issue regarding the special verdict instruction was beyond the scope of the hearing. The trial court ruled as follows:

4

Well, with respect to the issue of the exceptional sentence, the jury did find by special verdict that there was an aggravating circumstance, so I think Judge Fleming did have the ability, if he wished, to impose an exceptional sentence.

RP at 76.

The trial court then stated that it saw no reason to depart from Price's original sentence and sentenced Price to 374 months, plus 60 months for the weapon enhancement and 60 months for the aggravating factor. "I'm simply adopting what Judge Fleming, who heard the trial and knows it a lot better than I did and was there, did." RP at 78. The court added that it would impose the same legal financial obligations.

When defense counsel observed that the trial court had made its ruling without providing Price with his right to allocute, the court apologized and invited Price to speak. The trial court noted that the sentence was not yet final. Price then complained of problems in receiving his legal paperwork and reasserted his allegation of a public trial violation. Price also referred to his status as a minister and a Mason, the pain he had inflicted on his family, and the fact that resentencing was taking place on his wedding anniversary.

The trial court again apologized for not hearing Price earlier, stated that nothing Price said had changed the court's mind, and imposed the sentence it had described earlier. After the prosecutor stated that "the record should reflect the Court's judgment was not final at the point in time when the Court allowed Mr. Price to allocute," the court declared, "It's still not final because I haven't signed it yet. . . . After hearing him, I reconsidered it and reimposed it, and I apologize for not hearing from him before I gave my initial inclination." RP at 85.

Price appeals his resentencing.

## ANALYSIS

### I.  REVIEW OF EXCEPTIONAL SENTENCE

Price argues on appeal that the trial court erred by imposing an exceptional sentence based on an aggravating factor that was not properly found by the jury. *See Blakely*, 542 U.S. at 303 (unless admitted by defendant, facts supporting exceptional sentence must be submitted to jury and proved beyond reasonable doubt). The State responds that this issue has not been preserved for review.

We begin our analysis with RAP 2.5(c)(1), which states:

> If a trial court decision is otherwise properly before the appellate court, the appellate court may at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in an earlier review of the same case.

"This rule does not revive every issue or decision which was not raised in an earlier appeal." *State v. Barberio*, 121 Wn.2d 48, 50, 846 P.2d 519 (1993). RAP 2.5(c)(1) allows both trial and appellate courts discretion to revisit an issue on remand that was not the subject of the earlier appeal. *State v. Kilgore*, 167 Wn.2d 28, 38, 216 P.3d 393 (2009). "Only if the trial court, on remand, exercised its independent judgment, reviewed and ruled again on such issue does it become an appealable question." *Barberio*, 121 Wn.2d at 50. And, even if it is appealable, the appellate court still retains discretion to review it under RAP 2.5(c)(1). *Barberio*, 121 Wn.2d at 51.

In *Barberio*, the defendant did not challenge his exceptional sentences on appeal. 121 Wn.2d at 49. At resentencing, he challenged for the first time the aggravating factors supporting his exceptional sentence. *Barberio*, 121 Wn.2d at 49. The trial court declined to address the issue and reimposed the same exceptional sentence. *Barberio*, 121 Wn.2d at 50-51. The trial court

6

emphasized that neither new evidence nor the Court of Appeals opinion merited reexamination of Barberio's sentence. *Barberio*, 121 Wn.2d at 51-52.

Price did not raise the *Blakely* challenge to his special verdict instruction during his trial, in his first direct appeal, or in any of his three subsequent personal restraint petitions. During his resentencing, the trial court allowed the defense to make its record concerning the alleged *Blakely* error but did not rule on its merits. *See State v. Parmelee*, 172 Wn. App. 899, 908, 292 P.3d 799 (where resentencing court allowed defense to make a record and allowed the State to respond but declined to consider the issue, the issue was not properly before the Court of Appeals), *review denied*, 177 Wn.2d 1027 (2013). The trial court instead stated that the jury found an aggravating circumstance and that the prior judge had the ability to impose an exceptional sentence. Because the trial court declined to reach the merits of Price's challenge to the special verdict instruction, we decline to do so as well. *Kilgore*, 167 Wn.2d at 40; *Barberio*, 121 Wn.2d at 50-51.

II.    RIGHT OF ALLOCUTION

Price contends that the trial court violated his right of allocution by imposing sentence before giving him a chance to speak. "Allocution is the right of a criminal defendant to make a personal argument or statement to the court before the pronouncement of sentence." *State v. Canfield*, 154 Wn.2d 698, 701, 116 P.3d 391 (2005). This right is guaranteed by RCW 9.94A.500(1), and we review an alleged violation of this statutory right de novo. *State v. Hatchie*, 161 Wn.2d 390, 405, 166 P.3d 698 (2007).

The State contends that Price waived the issue because he did not object by requesting resentencing before a different judge. *See State v. Aguilar-Rivera*, 83 Wn. App. 199, 200, 920 P.2d 623 (1996) (violation of right of allocution entitles defendant to new sentencing hearing

before different judge). There is no authority requiring a defendant to request this remedy in order to preserve this issue for review.

Here, the trial court noted its intention to reimpose Price's original sentence before defense counsel interrupted to state that her client wanted to speak. The trial court then apologized and allowed Price to make a statement. When Price finished, the trial court stated that Price's comments did not alter the court's original inclination. Price's objection sufficiently preserved the allocution issue for review.

It is evident that the trial court did not precisely adhere to statutory procedure in sentencing Price. RCW 9.94A.500(1); *see In re Pers. Restraint of Echeverria*, 141 Wn.2d 323, 336, 6 P.3d 573 (2000) (trial court should "scrupulously follow" the statutory requirements by directly addressing defendants during sentencing, asking whether they wish to say anything in mitigation of sentence, and allowing them to make arguments as to the proper sentence before imposition of sentence).[3] Price argues that the trial court's actions constitute error that require resentencing before a different judge, while the State maintains that any error was harmless. We agree with the State.

Washington decisions differ on whether a violation of the right of allocution can constitute harmless error. In *State v. Delange*, 31 Wn. App. 800, 801, 644 P.2d 1200 (1982), the trial court noted its intention to accept the State's recommendation and sentenced the defendant to 10 years before defense counsel objected that the court had denied the defendant her right of allocution. When the defendant stated that she should have been heard before she was sentenced, the court

---

[3] *Echeverria* referred to former RCW 9.94A.110, which was recodified as RCW 9.94A.500 in 2001. 141 Wn.2d at 336; LAWS OF 2001, ch. 10, § 6.

8

stated that she hadn't yet been sentenced and invited her to speak. *Delange*, 31 Wn. App. at 801. The trial court then imposed a 10-year sentence. *Delange*, 31 Wn. App. at 802.

In *Delange*, the trial court had not entered its formal sentence before allowing the defendant to allocute, thus she exercised her right of allocution before sentencing. 31 Wn. App. at 802. "Although that right should have been afforded before the court revealed its intention with respect to sentence, its failure to do so was inadvertent. When defense counsel brought this to the court's attention, defendant was immediately given the opportunity to speak." *Delange*, 31 Wn. App. at 802-03. The *Delange* court determined that there was no need to reverse and remand for resentencing. 31 Wn. App. at 803.

A subsequent decision rejected the State's claim of harmless error. *State v. Crider*, 78 Wn. App. 849, 860-61, 899 P.2d 24 (1995). In *Crider*, the defendant filed a notice of appeal based on a violation of his right of allocution immediately after the trial court entered judgment. 78 Wn. App. at 853. At the trial court's invitation, the defendant then made a statement, but the court was not swayed. *Crider*, 78 Wn. App. at 853. The *Crider* court concluded that "[a]pplying harmless error in the face of a total failure of allocution prior to the imposition of sentence would severely erode a right which the State concedes to be fundamental." 78 Wn. App. at 861. The *Crider* court vacated the sentence and remanded for resentencing. 78 Wn. App. at 861.

In *Aguilar-Rivera*, the trial court imposed an exceptional sentence, legal financial obligations, 12 months of community supervision with conditions, and then stated, "That is the sentence of the court." 83 Wn. App. at 200-01. When the trial court directed the defendant to come forward for fingerprinting, defense counsel pointed out that the court had not permitted his client to allocute. *Aguilar-Rivera*, 83 Wn. App. at 201. The trial court acknowledged that it had just "skipped over" the allocution and listened to the defendant's statement. *Aguilar-Rivera*, 83

Wn. App. at 201. The trial court then adhered to its initial sentence. *Aguilar-Rivera*, 83 Wn. App. at 201. On appeal, the *Aguilar-Rivera* court rejected *Delange* and held that "when the right of allocution is inadvertently omitted until after the court has orally announced the sentence it intends to impose, the remedy is to send the defendant before a different judge for a new sentencing hearing." 83 Wn. App. at 203.

In *State v. Gonzales*, 90 Wn. App. 852, 853-54, 954 P.2d 360 (1998), the court employed a harmless error test where the defendant urged the trial court to proceed with sentencing and asked for the recommended low-end sentence, which the trial court then imposed. The *Gonzales* court noted that although the trial court had erred by failing to allow the defendant to speak on his own behalf, "to conclude that the denial of his right to allocution was prejudicial under the facts of this case would place form above substance." 90 Wn. App. at 855.

The facts here are closer to those in *Delange* than those of the other cases cited, and we see no reason to reject the application of harmless error. The trial court's inadvertent failure to allow Price to speak before announcing its intended sentence constitutes harmless error. The trial court had not yet pronounced the final sentence, and after Price spoke, the court observed that the sentence was not yet final. The trial court listened to Price and afterwards exercised its discretion in sentencing him. We decline to find prejudicial error on the facts presented and affirm the exceptional sentence imposed during the defendant's resentencing.

III.    Scrivener's Errors

The State points out that the defendant's judgment and sentence contains inconsistent references to his offender score and sentencing ranges. Paragraph 2.3 misstates his offender score as one and provides corresponding sentence ranges for each conviction. The trial court determined that Price's offender score was properly calculated as four and that his sentencing ranges were

those reflected in paragraph 4.12; *i.e*, 341 to 434 months for count I (including the 60-month enhancement), and 12+ to 16 months for count II. We remand for a ministerial correction of the scrivener's errors in paragraph 2.3 of Price's judgment and sentence. *State v. Moten*, 95 Wn. App. 927, 934-35, 976 P.2d 1286 (1999).

We affirm the exceptional sentence but remand for the ministerial correction of the scrivener's errors identified in this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, C.J.

Bjorgen, J.