# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No.58483-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CHAD LEE JAMES HUGHES, | |
| Appellant. | |

MAXA, P.J. – Chad L. J. Hughes appeals his sentence for three counts of first degree child molestation.

At sentencing, Hughes requested a special sex offender sentencing alternative (SSOSA). The trial court addressed the request, and indicated that it was not inclined to grant the SSOSA. But before the court announced a sentence, defense counsel interjected and pointed out that Hughes had the right to speak. The court apologized and allowed Hughes to make a statement. The court then stated that it still was denying the SSOSA, formally announced the sentence, and signed the judgment and sentence.

Hughes argues that the trial court violated his statutory right to allocute at sentencing. He also challenges certain provisions in his judgment and sentence.

We hold that (1) the trial court did not violate Hughes's statutory right to allocution; (2)the trial court must reconsider the imposition of special community custody condition 12,

which requires Hughes to submit to urinalysis and breath analysis upon request of the community corrections officer (CCO) or chemical dependency treatment provider, in light of *State v. Nelson*, ___ Wn.3d ___, 565 P.3d 906 (2025); (3) a provision in the judgment and sentence regarding the return of seized property is not unlawful; and (4) as the State concedes, the provisions in the judgment and sentence allowing for the payment of community supervision costs and the DNA collection fee must be stricken.

Accordingly, we affirm Hughes's sentence for first degree child molestation, but we remand for the trial court to consider the imposition of special community custody condition 12 and to strike the provisions regarding community supervision costs and the DNA collection fee.

FACTS

A jury convicted Hughes of three counts of first degree child molestation. Hughes's standard sentencing range was an indeterminate sentence of 98 to 130 months to life. A certified sex offender treatment provider evaluated Hughes for a SSOSA under RCW 9.94A.670(2).

At the sentencing hearing, the State argued that the trial court should decline Hughes's SSOSA request because it was too lenient and instead should impose a high-end sentence of 130 months to life. Hughes argued that the court should exercise its discretion and grant the SSOSA because he met the eligibility requirements and nonetheless would be subject to lifetime community custody.

After hearing argument from counsel, the trial court began to discuss the reasoning for its sentence. The court noted that it was guided by the SSOSA statute and concluded that Hughes qualified for a SSOSA. The court considered some of the factors under RCW 9.94A.670(4): whether the community would benefit from the alternative sentence, the statement from the victim's mother, and whether Hughes would be amenable to treatment. The court then stated, "I

think that ultimately I'm not going to grant the SSOSA. When I weigh all of those factors, the kind of aggravators -- and there's going to be no aggravating sentence here -- I'm going to sentence Mr. Hughes --" Report of Proceedings (RP) (June 23, 2023) at 20.

At that point, defense counsel interrupted the court, stating, "Your Honor, I'm so sorry, but Mr. Hughes has a right to speak at sentencing." RP (June 23, 2023) at 20. The court apologized to Hughes and said, "I do want to hear what you have to say." RP (June 23, 2023) at 21. Hughes then spoke, expressing that he made bad choices, did not have any excuses, cared about the victim, and was ready to take responsibility.

The trial court stated, "I appreciate your words" and noted that Hughes had been respectful at all times in the courtroom. RP (June 23, 2023) at 23. The court then stated, "I am still denying the SSOSA" and stated that it was imposing a minimum sentence of 98 months. RP (June 23, 2023) at 23. The court then signed the judgment and sentence.

Special community custody condition 12 mandated that Hughes must "[b]e available for and submit to urinalysis and/or breathanalysis upon the request of the CCO and/or chemical dependency treatment provider." Clerk's Papers at 484. Paragraph 4.4 of the judgment and sentence stated,

> Property may have been taken into custody in conjunction with this case. Property may be returned to the rightful owner. Any claim for return of such property must be made within 90 days unless forfeited by agreement in which case no claim may be made. After 90 days, if you do not make a claim, property may be disposed of according to law.

CP 473.

Three community custody conditions required Hughes to pay community supervision fees as required by the Department of Corrections (DOC). And the trial court imposed a $100 DNA collection fee.

3

Hughes appeals his sentence.

ANALYSIS

A.    RIGHT TO ALLOCUTION

Hughes argues that he was denied his right to allocution when the trial court stated that it thought it was not going to grant a SSOSA before he was allowed to speak. We disagree.

1.    Waiver

Initially, the State argues that Hughes failed to properly preserve the alleged violation of his statutory right to allocution by failing to object before the trial court began discussing its sentence. We disagree.

To preserve an allocution error on appeal, "the defendant must give the court some indication of his wish to plead for mercy or offer a statement in mitigation of his sentence." *State v. Canfield*, 154 Wn.2d 698, 707, 116 P.3d 391 (2005). If a defendant does not request the right of allocution, the failure to allow allocution cannot be challenged for the first time on appeal. *Id.*; *see also State v. Hatchie* 161 Wn.2d 390, 406, 166 P.3d 698 (2007) (holding that the defendant failed to preserve his right to allocution when he failed to object and stayed silent when the prosecutor requested that allocution be provided).

Here, defense counsel interrupted the trial court's discussion of its sentence and noted that Hughes had the right to speak at sentencing. So unlike in *Hatchie*, Hughes did not remain silent. Arguably, defense counsel should have interrupted as soon the trial court started to discuss sentencing. But we conclude that defense counsel's interruption was sufficient to preserve his challenge on appeal.

2.    Legal Principles

"Allocution is the right of a criminal defendant to make a personal argument or statement to the court before the pronouncement of sentence." *Canfield*, 154 Wn.2d at 701. The right to allocute is statutory. RCW 9.94A.500(1) states, "The court shall . . . allow arguments from . . . the offender. . . as to the sentence to be imposed." Failure to provide a defendant with an opportunity for allocution is error. *Hatchie*, 161 Wn.2d at 406.

Several cases have addressed the situation in which the trial court announced its sentence before the defendant was given the opportunity to allocute. In *State v. Delange*, the trial court stated its intention to impose a certain sentence, and then the defendant objected because she had been denied the right to allocute. 31 Wn. App. 800, 801, 644 P.2d 1200 (1982). The court allowed the defendant to speak, and then formally announced the same sentence. *Id.* at 801-02. Division Three of this court held that the right to allocute had not been violated. *Id.* at 803. The court stated,

> Here, the record shows the court had not entered its formal sentence prior to allowing defendant to speak in her own behalf, but had only indicated some of the underlying reasons for the sentence that it intended to enter. The defendant was then given an opportunity to speak directly to the court's reasons for accepting the recommendation in the presentence report. Consequently, she was given her right of allocution prior to the imposition of sentence, in compliance with *Happy*.[1] Although that right should have been afforded before the court revealed its intention with respect to sentence, its failure to do so was inadvertent. When defense counsel brought this to the court's attention, defendant was immediately given the opportunity to speak. Under these circumstances, *Happy* does not mandate reversal and remand for resentence.

*Id.* at 802-03.

---

[1] *State v. Happy*, 94 Wn.2d 791, 620 P.2d 97 (1980). The court in *Happy* held that a defendant must be provided with the right of allocution. *Id.* at 792.

In *State v. Crider*, the trial court rejected a SSOSA request and entered a judgment and sentence. 78 Wn. App. 849, 852, 899 P.2d 24 (1995). At the conclusion of the sentencing hearing, the defendant immediately filed a notice of appeal based on the court's failure to offer him allocution. *Id.* at 853. The court then asked the defendant if he wanted to speak, but defense counsel pointed out that at that point allocution was an empty gesture. *Id.* The defendant did briefly address the court, but the sentence did not change. *Id.* Division Three reversed. *Id.* at 861.

The court stated,

> [W]e agree with [the defendant] that an opportunity to speak extended for the first time after sentence has been imposed is "a totally empty gesture." Even when the court stands ready and willing to alter the sentence when presented with new information (and we assume this to be the case here), from the defendant's perspective, the opportunity comes too late. The decision has been announced, and the defendant is arguing from a disadvantaged position.

*Id.* In addition, the court refused to apply harmless error, stating, "Applying harmless error in the face of a total failure of allocution prior to imposition of sentence would severely erode a right which the State concedes to be fundamental." *Id.*

In *State v. Aguilar-Rivera*, the trial court formally announced its sentence and directed the defendant to come forward for fingerprinting. 83 Wn. App. 199, 200–201, 920 P.2d 623 (1996). The defendant then pointed out that he was not given the right of allocution. *Id.* at 201. The court allowed the defendant to speak, but adhered to the sentence it had announced. *Id.* Division One reversed, stating that the case was more like *Crider* than *Delange*. *Id.* at 203.

The court stated, "Although it is clear to us that the sentencing judge sincerely tried to listen to allocution with an open mind, the judge's oversight effectively left [the defendant] in the difficult position of asking the judge to reconsider an already-imposed sentence." *Id.* The court continued,

> We reject the rule announced in *Delange* that a court's omission of a defendant's allocution right does not mandate reversal as long as sentence has not been formally entered. We hold that the appearance of fairness requires that when the right of allocution is inadvertently omitted until after the court has orally announced the sentence it intends to impose, the remedy is to send the defendant before a different judge for a new sentencing hearing.

*Id.*

In *State v. Gonzales*, defense counsel argued for the recommended low-end sentence, and the defendant stated that he wanted to get the sentencing over with. 90 Wn. App. 852, 853-54, 954 P.2d 360 (1998). The court imposed a sentence at the bottom of the standard range without giving the defendant his right of allocution. *Id.* at 854. Division One stated, "[C]ontrary to the holdings of *Aguilar-Rivera*, and *Crider*, we hold that the inadvertent failure of the trial court to grant the right is not always reversible error. The facts of this case show why a harmless error analysis should be available, albeit used infrequently." *Id.* The court acknowledged that the trial court erred, but pointed out that resentencing would be a useless act because the defendant already had received the lowest possible standard range sentence. *Id.* at 855. Therefore, the court affirmed. *Id.*

In *Hatchie*, the trial court stated that it would impose a 55 month sentence unless the defendant had something to say on his behalf. 133 Wn. App. 100, 105, 35 P.3d 519 (2006), *aff'd on other grounds*, 161 Wn.2d 390, 166 P.3d 698 (2007). The prosecutor then interjected and suggested that the court formally ask the defendant if he wanted to allocute. *Id.* at 106. The defendant then addressed the court, and the court imposed a 53 month sentence. *Id.*

> This court stated,

> We decline to follow *Crider*, *Aguilar-Rivera*, or *Gonzales*. We initially note the long standing rule that a court's oral opinion is no more than an oral expression of the court's informal opinion at the time rendered; it is "necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned." A court's oral ruling has no binding or final effect until it is reduced to writing.

7

*Id.* at 118 (citations omitted). The court concluded, "The trial court's premature statement of its contemplated sentence is therefore not the imposition of a sentence. As such, [the defendant] was provided a meaningful opportunity to address the court before sentence was imposed." *Id.*

The Supreme Court affirmed on the grounds that Hatchie did not properly object. *Hatchie,* 161 Wn.2d at 406. But the Supreme Court noted in dicta that when the defendant was allowed to speak he "did so from the disadvantaged position of already hearing the court's tentative sentence." *Id.* at 405-06.

3. Analysis

Here, the trial court stated it *thought* it was not going to grant a SSOSA before giving Hughes a chance to allocute. But the court had not yet announced its sentence. And after being interrupted, the court expressly stated that it wanted to hear what Hughes had to say. After hearing Hughes's allocution and noting that it appreciated Hughes's words, the court stated that that it was "still" denying the SSOSA. RP (June 23, 2023) at 23. But the court disregarded the State's recommendation and imposed a low-end sentence.

These facts are different than those in *Crider* and *Aguilar-Rivera*. In *Crider*, the trial court already had formally imposed its sentence and entered the judgment and sentence, the sentencing hearing had ended, and the defendant had filed a notice of appeal before allocution was allowed. 78 Wn. App. at 852-53. In *Aguilar-Rivera*, the trial court had formally announced its sentence and had directed the defendant to come forward for fingerprinting before allocution was allowed. 83 Wn. App. at 200-01. We agree that after the sentence has been formally announced, the judgment and sentence has been entered, and the sentencing hearing essentially is over, allocution is meaningless, an "empty gesture." *Crider*, 78 Wn. App. at 853.

Unlike in *Crider* and *Aguilar-Rivera*, the trial court here had not formally announced its sentence. The court had stated an intention to deny the SSOSA, but it had not unequivocally done so. Instead, the court made a "premature statement of its *contemplated* sentence." *Hatchie*, 133 Wn. App. at 118 (emphasis added). The court stated, "I *think* that ultimately I'm not going to grant the SSOSA." RP (June 23, 2023) at 20 (emphasis added). But the court had not formally announced its sentence, the judgment and sentence had not yet been signed, and the sentencing hearing had not ended. Allocution was allowed in time for the court to consider Hughes's comments before announcing its sentence.

We agree with this court's analysis in *Hatchie*. Although the trial court stated its intention to deny the SSOSA, this was "no more than an oral expression of the court's informal opinion at the time rendered." *Hatchie*, 133 Wn. App. at 118. That opinion was subject to modification before the court formally announced its sentence. *See id.* As a result, Hughes "was provided a meaningful opportunity to address the court before sentence was imposed." *Id.*; *see also Delange*, 31 Wn. App. at 801–02 (although the trial court gave some of the underlying reasons for the sentence that it intended to enter before the defendant spoke, the defendant "was given her right of allocution prior to the imposition of sentence.").

Accordingly, we hold that the trial court did not violate Hughes's right to allocution at sentencing.

B.     URINALYSIS AND BREATH ANALYSIS CONDITION

Hughes challenges special community custody condition 12, under which he was required to "[b]e available for and submit to urinalysis and/or breathanalysis upon the request of the CCO and/or chemical dependency treatment provider." We remand for the trial court to consider imposition of this condition in light of *Nelson*, 565 P.3d 906.

C.      SEIZED PROPERTY PROVISION

Hughes argues that the trial court acted beyond its statutory authority by including paragraph 4.4 in the judgment and sentence.  We disagree.

Section 4.4 of the judgment and sentence states that certain property taken in conjunction with a criminal case may be returned to the rightful owner.  It then states that a property owner has 90 days to request their property back or it will be disposed of.  Hughes refers to this as a forfeiture provision.

But Section 4.4 does not affirmatively require Hughes to give up any property.  It informs Hughes that he may request his property back, if taken at all.  Paragraph 4.4 does not provide for the forfeiture of Hughes's property.  Accordingly, we reject Hughes's argument.

D.      COMMUNITY SUPERVISION AND DNA COLLECTION FEES

Hughes argues, and the State concedes, that the provisions regarding community supervision fees and the DNA collection fee must be stricken.  We agree.

In 2022, the legislature eliminated trial courts' ability to impose supervision fees as a condition of community custody in 2022.  *See* LAWS OF 2022, ch. 29, § 7.  RCW 9.94A.703, which dictates the conditions of community custody, no longer allows for the imposition of community custody supervision fees on convicted defendants.

Similarly, former RCW 43.43.7541 (2018) required every sentence to include a $100 DNA collection fee unless the offender's DNA previously had been collected.  However, the legislature eliminated this provision effective July 1, 2023.  LAWS OF 2023, ch. 449 § 4.  Although this amendment took effect after Hughes's sentencing, it applies to cases pending on appeal.  *State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023).

Accordingly, we hold that the provisions regarding supervision fees and the DNA collection fee must be stricken from the judgment and sentence.

CONCLUSION

We affirm the trial court's sentence, but we remand for the trial court to consider the imposition of special community custody condition 12 and to strike the provisions regarding supervision fees and the DNA collection fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

VELJACIC, A.C.J.

GLASGOW, J.