[No. 78889-8.    En Banc.]
Argued June 26, 2007.    Decided September 6, 2007.

THE STATE OF WASHINGTON, *Respondent*, v. RAYMOND K. HATCHIE, *Petitioner*.

*Kathryn A. Russell Selk* (of *Russell Selk Law Office*), for petitioner.

*Gerald A. Horne, Prosecuting Attorney,* and *Michelle Luna-Green, Deputy,* for respondent.

*Douglas B. Klunder* on behalf of American Civil Liberties Union of Washington, amicus curiae.

¶1 SANDERS, J. — We are asked to determine if a misdemeanor arrest warrant gives police the "authority of law" to enter someone's home. WASH. CONST. art. I, § 7.[1]

¶2 The police entered Raymond Hatchie's house looking for Eric Schinnell. They had a misdemeanor arrest warrant for Schinnell and believed he lived in Hatchie's duplex. But Schinnell was merely a guest, not a resident. Before the police found Schinnell hiding under a truck in the garage, they saw evidence of methamphetamine manufacturing in plain view. Based upon these observations, they obtained a search warrant for Hatchie's house and seized the suspected evidence. Hatchie moved to suppress the evidence, arguing first, a misdemeanor arrest warrant does not give police the "authority of law" to enter a private residence, and second, the police had no probable cause to believe Schinnell was a resident at Hatchie's home. Lastly, Hatchie claimed he was not given a chance to allocute until after the judge orally announced his proposed sentence. The Court of Appeals affirmed Hatchie's conviction.

¶3 We hold an arrest warrant—even for a misdemeanor—constitutes "authority of law" which allows the police the *limited* power to enter a residence for an arrest, as long as (1) the entry is reasonable, (2) the entry is not a pretext for conducting other unauthorized searches or investigations, (3) the police have probable cause to believe the person named in the arrest warrant is an actual resident of the home, and (4) said named person is actually

---

[1] "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7.

present at the time of the entry. We also hold Hatchie failed to preserve any violation of his right to allocution through objection.

FACTS

¶4 In June 2003 a narcotics unit of the Pierce County Sheriff's Department observed Eric Schinnell buying precursor materials to methamphetamine manufacture—muriatic acid, lithium batteries, and lye. The officers followed Schinnell and discovered his driver's license was suspended and there was an outstanding misdemeanor arrest warrant for him.[2] The officers decided to pull him over but lost sight of his truck. However, they soon found it parked in the driveway of a duplex unit. A second car registered to him was also parked on the lawn in front of the house.

¶5 The police interviewed two neighbors. One said he believed Schinnell lived in the house, and he had seen him there earlier that day. The second neighbor was not sure whether Schinnell lived there but said he often saw him there and believed as many as six people lived there. The police also spoke with Tim Petticord, who was standing in the duplex unit's yard. Petticord told the deputies that if Schinnell's truck was there, Schinnell was there too.

¶6 The deputies approached the house to make contact with Schinnell and after knocking for about 45 minutes, Donald Robbins answered. Robbins said he believed Schinnell was "home" because his truck was there, but Robbins could not be sure since he had been sleeping. Report of Proceedings (RP) at 28. The deputies announced their presence, but Schinnell did not respond. The deputies entered to serve the misdemeanor arrest warrant and found Schinnell hiding under a truck in the garage. While searching for him, the police saw items commonly used to

---

[2] The warrant was for failing to appear for sentencing on a conviction for third degree driving with a suspended license.

manufacture methamphetamine. Robbins told the police Raymond Hatchie rented the duplex. Robbins also said he had been living with Hatchie for three months, and Schinnell had been there "off and on" for the last two months. *Id.* at 38.

¶7 Based upon what they had seen while arresting Schinnell, the officers obtained a search warrant for Hatchie's duplex to look for evidence of possession and manufacture of methamphetamine. Hatchie moved to suppress the evidence, claiming a misdemeanor arrest warrant did not authorize the police to enter a private residence and alternatively, the police did not have sufficient facts to reasonably believe Schinnell was living in Hatchie's home. The superior court denied the motion, and a jury found Hatchie guilty of unlawful manufacture of a controlled substance. At sentencing, the judge announced he was "ready to rule" and would impose a 55 month sentence unless Hatchie had something else to say. RP at 19 (Sentencing). Neither Hatchie nor his counsel responded. The prosecutor, however, suggested the judge formally ask if Hatchie wished to allocute. Hatchie's counsel claimed any allocution would be pointless because the court had ruled, but the judge said he would consider anything Hatchie had to say. After Hatchie addressed the court, the judge reduced the sentence by two months.

¶8 Hatchie appealed. In the published portion of its opinion, the Court of Appeals held the evidence was admissible and Hatchie's right to allocution was not violated.[3] We granted Hatchie's petition for review, 159 Wn.2d 1014, 157 P.3d 403 (2007), and affirm.

STANDARD OF REVIEW

¶9 We review questions of constitutional construction de novo. *State v. Norman*, 145 Wn.2d 578, 589, 40 P.3d

---

[3] The Court of Appeals ruled against Hatchie on several other issues, which he did not ask this court to review. *State v. Hatchie*, 133 Wn. App. 100, 135 P.3d 519 (2006).

1161 (2002). Allocution is a statutory right, and we also review questions of statutory construction de novo. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001).

*I.   What authority of law does a misdemeanor arrest warrant provide?*

¶10  Our state constitution provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. We have long held a warrantless search is per se unreasonable, unless it fits within one of the " 'jealously and carefully drawn exceptions.' " *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996) (internal quotation marks omitted) (quoting *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980)). Plain view is one such exception.

¶11  After the Pierce County deputies saw materials used for methamphetamine manufacturing in plain view, they obtained a search warrant for Hatchie's home. Therefore, we must ask whether their plain view observation was a valid one. A plain view search is legal when the police (1) have a valid justification to be in an otherwise protected area and (2) are immediately able to realize the evidence they see is associated with criminal activity. *State v. Myers*, 117 Wn.2d 332, 346, 815 P.2d 761 (1991). *See generally* Charles W. Johnson, *Survey of Washington Search and Seizure Law: 2005 Update*, 28 SEATTLE U. L. REV. 467, 638 (2005).

*a.   A misdemeanor arrest warrant gives officers the limited ability to enter a residence to execute the warrant*

¶12  An arrest is unquestionably a seizure of the person arrested. Under both federal and Washington State law, a felony arrest warrant gives the police the authority to enter the house of the accused for a brief period of time. In

*Payton v. New York*, 445 U.S. 573, 603, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), the United States Supreme Court said, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *See also Steagald v. United States*, 451 U.S. 204, 214 n.7, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981) ("[A]n arrest warrant authorizes . . . a limited invasion of that person's privacy interest when it is necessary to arrest him in his home."); *State v. Williams*, 142 Wn.2d 17, 24, 11 P.3d 714 (2000) (relying on *Payton* for article I, section 7 analysis); *State v. Vy Thang*, 145 Wn.2d 630, 41 P.3d 1159 (2002); *State v. Hopkins*, 113 Wn. App. 954, 958, 55 P.3d 691 (2002) ("[A]n arrest warrant, by itself, provides authority for the police to enter a person's residence to effectuate his or her arrest."). While the Supreme Court limited its holding in *Payton* to felony arrest warrants—as per the facts before it—it expanded its analysis to misdemeanor warrants in *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984). There the Court said, "When the government's interest is only to arrest for a minor offense, . . . the government usually should be allowed to make such arrests [inside the sanctity of the home] only with a warrant issued upon probable cause by a neutral and detached magistrate." *Id.* (footnote omitted). Similarly, all other courts to consider the issue have likewise construed *Payton*'s broad language to apply to misdemeanor warrants as well. *See State v. Hatchie*, 133 Wn. App. 100, 109 n.3, 135 P.3d 519 (2006).

¶13 Of course police action may pass muster under a federal constitutional analysis but still fail under our state constitution. It is well established that in some areas article I, section 7 provides greater protection than does the Fourth Amendment. *State v. McKinney*, 148 Wn.2d 20, 29, 60 P.3d 46 (2002); *State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984) ("[T]he unique language of Const. art. 1, § 7 provides greater protection to persons under the Washington Constitution than U.S. Const. amend. 4 provides to

persons generally.". The differences in interpretations are largely because of the differences in the language of the two constitutional protections. The Fourth Amendment provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Therefore, a Fourth Amendment analysis hinges on whether a warrantless seizure is reasonable. But an article I, section 7 analysis hinges on whether a seizure is permitted by "authority of law"—in other words, a warrant. WASH. CONST. art. I, § 7.

¶14 But like our court, the United States Supreme Court has said the sanctity of the home is perhaps most deserving of constitutional protection against police intrusion.

> [T]he "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. It is not surprising, therefore, that the Court has recognized, as "a 'basic principle of Fourth Amendment law[,]' that searches and seizures inside a home without a warrant are presumptively unreasonable."

*Welsh*, 466 U.S. at 748-49 (second alteration in original) (footnote omitted) (citations omitted) (quoting *United States v. U.S. Dist. Court*, 407 U.S. 297, 313, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972); *Payton*, 445 U.S. at 586). We too have held a citizen's privacy is most protected in his or her home, and any intrusion into the home without a warrant is per se unreasonable. *State v. Young*, 123 Wn.2d 173, 185, 867 P.2d 593 (1994); *State v. Solberg*, 122 Wn.2d 688, 861 P.2d 460 (1993); *State v. Berber*, 48 Wn. App. 583, 589, 740 P.2d 863 (1987). And even though the wording of article I, section 7 compels us to apply this standard generally to any private affair disturbed by state action, we are most concerned with protecting the home as "the closer officers come to intrusion into a dwelling, the greater the

constitutional protection." *State v. Chrisman*, 100 Wn.2d 814, 820, 676 P.2d 419 (1984) (*Chrisman* II).

¶15 Here the police had an arrest warrant, albeit one for a minor crime. We must decide what limited authority a misdemeanor warrant gives to police officers. As a general matter, warrants provide authority of law under article I, section 7. *State v. Morse*, 156 Wn.2d 1, 7, 123 P.3d 832 (2005); *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999). For purposes of our constitutional analysis, the requirements for obtaining a felony or a misdemeanor arrest warrant are the same: a neutral and detached magistrate must determine whether probable cause exists to say a crime was committed and it was committed by the suspect named in the warrant.[4] *State v. Gaddy*, 152 Wn.2d 64, 70, 93 P.3d 872 (2004).

¶16 Hatchie points to no case that suggests the authority of law provided by a valid misdemeanor warrant is insufficient to enter a residence to arrest someone under some conditions. As Justice Robert H. Jackson explained,

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.... Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to

---

[4] Arrest warrants do differ from search warrants however. "A search warrant, in contrast, is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." *Steagald*, 451 U.S. at 213. Furthermore, " 'an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen.' " *Williams*, 142 Wn.2d at 24 (quoting *Payton*, 445 U.S. at 602). *See also* Johnson, *supra*, at 516.

a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.

*Johnson v. United States*, 333 U.S. 10, 13-14, 68 S. Ct. 367, 92 L. Ed. 436 (1948) (footnote omitted). Here the warrant was issued by a neutral and detached magistrate. A judicial officer determined there was probable cause to believe a crime was committed and Schinnell committed that crime. This determination constitutes authority of law that justifies an intrusion into the suspect's home to execute the arrest under limited circumstances. Hatchie, on the other hand, essentially asks us to hold police may never enter a residence on a misdemeanor arrest warrant.

¶17 Considering we have held felony arrest warrants provide limited authority to effect an arrest in the home, we see no way to distinguish a misdemeanor arrest warrant to not provide similar authority of law. To do so would create a system whereby some warrants provide authority of law and some do not. As we see it, an arrest warrant is either authority of law to invade the home or it is not.

¶18 Of course, but for that warrant, police entry into a private home to make a misdemeanor arrest is per se invalid. As the Supreme Court said, "When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate." *Welsh*, 466 U.S. at 750 (footnote omitted); *see id.* at 749 n.11 ("Because we conclude that, in the circumstances presented by this case, there were no exigent circumstances sufficient to justify a warrantless home entry, we have no occasion to consider whether the Fourth Amendment may impose an absolute ban on warrantless home arrests for certain minor offenses.").

¶19 Of course, there is room for the police to abuse this authority. Therefore, we take pains to point out an arrest warrant does not allow for a general search of the premises. Rather, it allows the police only the limited ability to enter the residence, find the suspect, arrest him, and leave. Police action that deviates from the narrow bounds of this authority has no authority of law. In the past we have carefully scrutinized police conduct when they effectuate an arrest warrant, and we have not hesitated to suppress evidence gained from unauthorized extensions of an officer's arrest authority. *See Chrisman* II, 100 Wn.2d at 820; *State v. Kull*, 155 Wn.2d 80, 118 P.3d 307 (2005). In *Chrisman* II, we considered whether an officer's search incident to arrest violated article I, section 7.[5] We focused on the officer's actions *after* he arrested the suspects. We "recognized that the presence of an officer, which is initially lawful, can be rendered unlawful by his movement." *Chrisman* II, 100 Wn.2d at 820. But here we are asking if the officers' initial presence was lawful, not if some later act after the arrest exceeded the officers' scope of their authority. Our specific holding in *Chrisman* II was

> the officer's warrantless entry into the dormitory room, following the misdemeanor arrest, was not permitted because the officer was not presented with facts sufficient to demonstrate (1) a threat to the officer's safety, or (2) the possibility of destruction of evidence of the misdemeanor charged, or (3) a *strong likelihood of escape.*

*Id.* at 821. *Chrisman* II illustrates the limited authority afforded by a misdemeanor arrest warrant.[6] If the police

---

[5] Originally we held the officer's search violated both the Fourth Amendment and article I, section 7. *State v. Chrisman*, 94 Wn.2d 711, 619 P.2d 971 (1980). The United States Supreme Court reversed, saying the search did not violate the Fourth Amendment because the officer had a right to stay with the arrestee. *Washington v. Chrisman*, 455 U.S. 1, 6, 102 S. Ct. 812, 70 L. Ed. 2d 778 (1982) ("The officer had a right to remain literally at Overdahl's elbow at all times."). On remand, however, we found the search still violated article I, section 7. *Chrisman* II, 100 Wn.2d at 821.

[6] Similarly, we relied on *Chrisman* II in *Kull. Kull*, 155 Wn.2d at 84. There officers arrived at Leslie Kull's apartment to arrest her on a misdemeanor traffic

had arrested Schinnell while he was outside the home, they would have had no authority to enter the house.

¶20 Similarly, the police cannot use an arrest warrant—misdemeanor or otherwise—as a pretext for conducting a search or other investigation of someone's home. As the American Civil Liberties Union of Washington (ACLU-WA) points out in its amicus brief, there are thousands of misdemeanor arrest warrants in the state that have not been served. Amicus Curiae Br. of ACLU-WA at 9-10. Here while Hatchie at times alluded to a pretext argument, he never specifically raised such an argument so we do not consider it. But we do note that the police cannot use arrest warrants as a guise or pretext to otherwise conduct a speculative criminal investigation or a search.[7] *State v. Michaels*, 60 Wn.2d 638, 644, 374 P.2d 989 (1962) ("An arrest may not be used as a pretext to search for evidence." (citing *United States v. Lefkowitz*, 285 U.S. 452, 52 S. Ct. 420, 76 L. Ed. 877 (1932); *Taglavore v. United States*, 291 F.2d 262 (9th Cir. 1961))); *see Ladson*, 138 Wn.2d at 353 ("Just as an arrest may not be used as a pretext to search for evidence, a traffic infraction may not be used as a pretext to stop to investigate for a sufficient reason to search even further."). A sounder practice would be for police to secure a search warrant for a particular premise. A neutral magistrate's determination that police have probable cause to search a particular residence gives police broader authority when they enter a home and also negates

warrant. Before they reached her apartment unit, however, they found her in the building's laundry room and arrested her. They then followed her into her bedroom. Like *Chrisman* II, *Kull* involved police action after the arrest had been made. And though we quoted *Chrisman* II, saying, " 'in cases of minor violations, where no danger exists, and where there is no threat of destruction of the evidence, we can find no compelling need to enter a private residence,' " we did so in the context of a warrantless search made after the arrest. *Id.* at 87 (quoting *Chrisman* II, 100 Wn.2d at 822). Here the crucial difference is the officers had a warrant and had not yet arrested Schinnell.

[7] While the petitioner did not raise any pretext argument, it is unclear whether such an argument would have prevailed in this case. During the suppression hearing, the officers testified they would have arrested Schinnell based purely on the misdemeanor arrest warrant. Furthermore, the officers attempted to pull him over, but Schinnell was able to elude the officers before returning to Hatchie's duplex.

any suspicion of a pretextual intrusion to effectuate an investigation.

¶21 But while we recognize the potential for abuse, we also recognize an arrest warrant is nevertheless authority of law that carries with it the limited authority to enter a suspect's residence. *See Payton*, 445 U.S. at 602-03. After the police obtain a valid warrant, they have lawful authority for a limited intrusion to enter a residence, execute the arrest, and then promptly leave.[8] That is what happened here. The police entered the home, found Schinnell hiding under a truck, arrested him, and then promptly left to secure a second warrant (this time a search warrant) based on what they had seen. Entering a residence for this limited purpose does not violate the scope of an arrest warrant, and the police had authority of law for such a limited intrusion.

### b. The police had probable cause to believe Schinnell was a resident of Hatchie's home

¶22 Next, Hatchie argues the police illegally entered his house because Schinnell was not a resident there. In *Steagald*, the United States Supreme Court held an arrest warrant, by itself, does not allow the police to enter a third person's residence. *Steagald*, 451 U.S. 204; *see also Hocker v. Woody*, 95 Wn.2d 822, 825, 631 P.2d 372 (1981). To intrude into a third party's residence, the police need at least a search warrant. This is because

[t]he third party's privacy interest in being free from unreasonable invasion of his home is distinguishable from the suspect's interest in avoiding unreasonable seizure. It is the rights of the homeowner that the issuing magistrate must balance with the necessity for the search. Unless the third

---

[8] Of course, the police intrusion itself must be reasonable. For instance, it might be unreasonable for the police to break down a suspect's door in the dead of night to execute a misdemeanor traffic warrant. But this is not our situation. The police tried to pull Schinnell's vehicle over but lost sight of him. The arrest was not made in the middle of the night but in the early evening of June 11. (The surveillance began at 6:45 PM, and Schinnell was arrested approximately an hour or two later.) The police knocked at the door and called Schinnell's name for over 45 minutes before entering. The misdemeanor arrest warrant provided the authority for this limited and reasonable intrusion.

party's interests are considered, the search is no more reasonable than if no warrant had been issued. To allow an arrest warrant for a nonviolent misdemeanor to create *carte blanche* for searching the homes of third parties creates the risk of the sort of abuse complained of here: using the arrest warrant as a "pretext for entering a home in which the police have a suspicion, but not probable cause to believe, that illegal activity is taking place."

*State v. Anderson*, 105 Wn. App. 223, 232, 19 P.3d 1094 (2001) (citations omitted) (quoting *Steagald*, 451 U.S. at 215). Therefore, if the police did not reasonably believe, based on objective evidence, that Schinnell was a resident the arrest warrant could not authorize them to enter. But the State claims the police had probable cause to believe this was Schinnell's residence.

¶23 Despite the police mistaking Schinnell for a resident of Hatchie's home, this will not void an otherwise valid arrest warrant. *Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921 (9th Cir. 2001); *Valdez v. McPheters*, 172 F.3d 1220, 1225 (10th Cir. 1999) ("[R]equiring actual knowledge of the suspect's true residence would effectively make *Payton* a dead letter."). An arrest warrant does not specify precisely where a suspect is to be arrested. As Professor Wayne R. LaFave argues,

When . . . objecting that a search warrant rather than an arrest warrant was required, surely it ought not be resolved on the basis of information *then* available showing the premises entered were not *in fact* the residence of the person sought to be arrested. Rather, in such circumstances the matter to be decided is whether the entering officers reasonably believed that the place entered was the residence of the person named in the arrest warrant, for were it otherwise the police would be caught in an incredible Catch-22 situation.

3 WAYNE R. LAFAVE, SEARCH & SEIZURE § 6.1(b), at 283 (4th ed. 2004) (footnote omitted).

¶24 The obvious question is, however, when does an officer have "reason to believe" a place to be entered is the suspect's residence? *See United States v. Magluta*, 44 F.3d

1530, 1534 (11th Cir. 1995) ("The 'reason to believe' standard was not defined in *Payton*, and since *Payton*, neither the Supreme Court, nor the courts of appeals have provided much illumination."). Many federal circuit courts that have addressed this, except the Ninth Circuit, have said the " 'reason to believe' language" is "less exacting than probable cause." *Commonwealth v. Silva*, 440 Mass. 772, 777 & n.7, 802 N.E.2d 535 (2004) (detailing different federal approaches). Most state courts have also adopted this approach. *See id.* Below, however, the Court of Appeals held that our heightened standard under article I, section 7 requires the police to demonstrate they had probable cause to believe they were acting properly.[9] *Hatchie*, 133 Wn. App. at 114-15. We hold without further elaboration "probable cause" is the minimum standard for determining when an officer has reason to believe a place to be entered is the suspect's residence.

¶25 Probable cause requires more than suspicion or conjecture, but it does not require absolute certainty. When evaluating probable cause we look to "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *see also State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986) ("Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed.").

¶26 Both Schinnell's vehicle registration and arrest warrant listed a different address. Also, the police never questioned Robbins (the man who answered the door) specifi-

---

[9] Professor LaFave also supports a probable cause standard, one that "counsels the use of common sense in applying the probable cause requirement." 3 LaFave, *supra*, § 6.1(a), at 267 (footnote omitted). The Court of Appeals found there is little practical difference between those courts requiring probable cause and those requiring "reasonable belief." *Hatchie*, 133 Wn. App. at 114 n.5.

cally whether Schinnell was a resident, though Robbins did say Schinnell was "home." On the other hand, Schinnell returned to the home after making his purchases, he had two vehicles registered to him in the driveway (one of which was parked on the lawn), a neighbor said Schinnell lived there, and another neighbor said he frequently saw him, though he didn't know if he lived there.[10]

¶27 These facts together seem barely enough to suggest to a reasonable person this was Schinnell's residence. While different addresses were listed, the Court of Appeals noted, "individuals frequently change their residence without updating Department of Licensing records as they are legally required to do. And it is certainly not surprising that an individual with outstanding warrants will fail to inform the government of his current residence." *Hatchie*, 133 Wn. App. at 115 (citations omitted). Were the two cars registered to the suspect not simultaneously present at the home, showing probable cause would certainly be more problematic.

## II. Was Hatchie's right to allocution violated?

■ ¶28 Hatchie next argues he was denied his right of allocution. RCW 9.94A.500(1) provides, in part, "The court shall . . . allow arguments from . . . the offender . . . ." As we have said, "Failure by the trial court to solicit a defendant's statement in allocution constitutes legal error." *State v. Hughes*, 154 Wn.2d 118, 153, 110 P.3d 192 (2005), *overruled in part on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). But we refused to consider whether Hughes's right to allocution was violated because he failed to object at trial. *Id.* Here Hatchie never objected and was given a right to allocute, but did so from the disadvantaged position of already

---

[10] Federal courts have consistently upheld arrests when police relied on neighbors' statements to conclude a certain place is the residence of the person to be arrested. *United States v. Boyd*, 180 F.3d 967 (8th Cir. 1999); *United States v. Lovelock*, 170 F.3d 339 (2d Cir. 1999); *United States v. Manley*, 632 F.2d 978 (2d Cir. 1980) (police had probable cause to believe suspect lived at residence based on neighbors' photo identification of defendant as resident).

hearing the court's tentative sentence. *See State v. Crider*, 78 Wn. App. 849, 861, 899 P.2d 24 (1995).[11] Nevertheless, the judge still heard Hatchie's prepared statement and reduced his sentence by two months. If there was an error, defense counsel failed to preserve it by properly objecting at trial to the judge's giving an oral sentence before allowing Hatchie a chance to speak. Indeed, it was the prosecutor who requested Hatchie be given a formal chance to allocute—Hatchie and his counsel stayed mum. Absent an objection, no claim of error is preserved for us to consider.

CONCLUSION

¶29 We hold a valid misdemeanor arrest warrant gives police limited authority to enter a suspect's residence to make the arrest if they have probable cause to believe the place to be entered is the suspect's residence and he is currently present. We also hold under these facts the police had probable cause to believe this was Schinnell's house and their entry and plain view observation of Hatchie's methamphetamine manufacturing equipment was under authority of law. Finally, we hold Hatchie failed to preserve any possible violation of his right of allocution. Accordingly, we affirm the Court of Appeals.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

---

[11] There is a split among the divisions of whether to apply harmless error analysis, but we need not reach that issue because of Hatchie's failure to object. *Compare State v. Gonzales*, 90 Wn. App. 852, 954 P.2d 360 (1998) (adopting harmless error analysis to allocution proceedings) *with Crider*, 78 Wn. App. at 860-61 (stating a defendant is automatically entitled to a new sentencing hearing when his right to allocution is violated).