

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39193-1-III |
| Respondent, | ) | (Consolidated with |
| | ) | No. 39194-9-III) |
| v. | ) | |
| | ) | |
| JAMES THOMAS CARDON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Following a jury's verdicts of guilty, James Thomas Cardon was sentenced on 11 felonies: one count of second degree assault with a deadly weapon enhancement, eight counts of felony violation of a domestic violence no-contact order, and two counts of witness tampering, one with a domestic violence enhancement. He raises five issues on appeal: (1) prosecutorial misconduct or alternatively ineffective assistance of counsel for failing to object to the prosecutor's comments in closing that certain evidence was undisputed, (2) ineffective assistance of counsel for failing to request a limiting instruction, (3) violation of his right to allocution, (4) imposition of a post-conviction domestic violence no-contact order that exceeded the statutory maximum sentence, and (5) imposition of a victim penalty assessment (VPA) contrary to recent statutory amendments.

We affirm Cardon's convictions but agree that the imposition of the 10-year no-contact order protecting Whiteman exceeded the statutory maximum sentence for domestic violence crime in which Whiteman was a victim. We vacate Cardon's sentence and remand for a de novo resentencing.

BACKGROUND

*Allegations and Charges*

Cardon and Jamie Whiteman had been in a dating relationship for many years. Richard Temple was a close family friend of Whiteman.

In late November 2020, Whiteman was sitting in the passenger seat of Temple's parked car. As Temple walked toward his vehicle, he noticed Cardon approaching. When Cardon realized that Whiteman was sitting in Temple's car, he attempted to forcibly remove her from the car. When Temple approached Cardon and Whiteman, Cardon attacked Temple with an aluminum baseball bat. Cardon raised the bat over his head and swung it downward, breaking Temple's arm.

At the hospital, Temple told police that Cardon had struck him with the bat outside his home. Temple also mentioned that Whiteman had been present during the assault.

After taking a report from Temple, police discovered that a criminal domestic violence no-contact order prohibited Cardon from contacting Whiteman. Additionally, police confirmed that Cardon had two prior convictions for violating no-contact orders.

Cardon was eventually arrested on January 9, 2021 and booked into the Spokane County jail.

The State alleged that while Cardon remained in custody, he placed 54 attempted calls and 37 completed calls between January 15, 2021 and March 3, 2021, to a phone number associated with Whiteman. A detective confirmed the existence of a pretrial no-contact order issued in September 2020, prohibiting Cardon from having contact with Whiteman, which was still in effect during the time frame of the jail calls. During these phone calls, Cardon asks Whiteman to contact Temple and ask him to retract his statement to police. Cardon was ultimately released from jail on March 4, 2021.

In November 2021, while the assault charge was pending, Ms. Whiteman contacted Mr. Temple about dropping the charges. Mr. Temple also received messages telling him that he should not show up to court or should change his testimony from phone numbers he did not recognize.

In April 2022, an Airway Heights Corporal pulled over a vehicle with Cardon in the driver's seat and Whiteman in the passenger seat. The Corporal confirmed that there was a valid and served domestic violence no-contact order preventing Cardon from having contact with Whiteman, and that he had two prior convictions for violating a no-contact order. Cardon was arrested for violating the no-contact order.

In January 2022, the court permitted the State to file an amended information adding additional charges and a sentencing enhancement on the assault charges. In June

3

2022, a jury found Cardon guilty of 11 felonies and entered special verdicts finding that he used a deadly weapon in the commission of the assaults, and committed certain offenses against an intimate partner, Whiteman.

At sentencing, the trial court granted the State's motion to dismiss count 1, an alternative charge of second degree assault, on double jeopardy grounds.

The court ultimately sentenced Cardon to serve 63 months of confinement for the remaining second degree assault conviction with an additional 12 months for the deadly weapon enhancement plus 18 months of community custody. For each of the remaining counts, the court sentenced Cardon to 60 months of confinement to run concurrent with the sentence for the assault. At the request of the State, the court imposed a 10-year domestic violence no-contact order prohibiting Cardon from contacting Whiteman. Finally, after finding Cardon indigent, the court imposed the $500 VPA.

Cardon appeals his convictions and sentence.

ANALYSIS

1.  CLOSING ARGUMENT

Cardon contends, for the first time on appeal, that the prosecutor committed misconduct during closing argument. Specifically, he argues that the prosecutor's comments in closing, that no contrary evidence was offered to dispute certain facts, improperly shifted the burden of proof and commented on Cardon's exercise of his right to remain silent and the right to present a defense. Alternatively, he asserts that defense

counsel was ineffective for failing to object to the prosecutor's statements. In response, the State argues that the prosecutor did not engage in misconduct, that defense counsel's performance was not deficient given that the statements were unobjectionable, and that Cardon has not demonstrated any resulting prejudice. We conclude that the prosecutor's comments did not rise to the level of misconduct, which consequently means that defense counsel was not ineffective for failing to object.

*A. Additional Background*

At trial, the State called five direct witnesses: the emergency room physician who treated Temple for his broken arm, the Spokane police officer who investigated the assault on Temple and the no-contact order violation on the same date, the Airway Heights Corporal that arrested Cardon on April 19, 2022, the detective who investigated Cardon's calls from jail and Richard Temple, the assault victim. Whiteman did not testify.

Cardon did not testify at trial. He called one witness, a defense investigator.

On appeal, Cardon points to comments made by the prosecutor during closing that he claims were improper. At the outset of his closing argument, the prosecutor reminded the jury that his statements were not evidence and that the jury should disregard anything he said that "contradicts the evidence or runs contrary to the [jury] instructions." Rep. of Proc. (RP) (June 15, 2022) at 466.

5

No. 39193-1-III (consolidated with 39194-9-III)
*State v. Cardon*

In discussing the evidence and elements of the charges for violating the no-contact

order, the prosecutor stated:

> So let's move on now to the Counts 3 through 9, violations of the
> court order. The to convict or elements instruction is up there, there's a
> blank for the date, that's the thing that's different in each of those counts.
> Again, there are some things that are not in dispute. The dates that these
> offenses happened. We'll talk about some of those specific dates in a
> minute. *The fact that they were made—it happened in Spokane County.*
> *There's no contrary evidence offered.* The fact that that order existed,
> that's State's Exhibit 37, which you'll have in your deliberations. The fact
> that Mr. Cardon has previously been convicted twice for violation of a no-
> contact order that's State's Exhibits 3 and 4 which have been admitted and
> you'll have during your deliberations. *There's no doubt to those. There's*
> *been no evidence presented to suggest otherwise.* So what is it you're here
> to decide in relation to Counts 3 to 9? Two issues, did Mr. Cardon know
> about the order and did Mr. Cardon knowingly violate the order? And the
> definition of knowledge is up there on the screen it's also in your
> instructions. How do we know that Mr. Cardon knew about the order?
> Well, we have State's Exhibit 37 here, with Mr. Cardon's name on it on the
> front page. We have a signature on page 2 there for the defendant whose
> named as James Cardon on this front page.

RP (June 15, 2022) at 471-72 (emphasis added). The prosecutor continued discussing

witness testimony that tended to establish Cardon's knowledge of the no-contact order

and his knowing violation of that order.

Last, with regard to the witness tampering charges, the prosecutor contended:

> So now we move on to Counts 10 and 11, counts of witness tampering.
> Elements are up there for Count 10 and elements are now up there for
> Count 11 those are in your instructions. *Again, those things are not in*
> *dispute. There's been no contrary evidence offered about the date range*
> *that these calls took place, they're the basis for these counts*.
> The fact that Mr. Temple and Ms. Whiteman were, in fact, witnesses
> to the underlying assault, and violation of the no-contact order from

6

> November 29th of 2020. And that this happened in Spokane County, Washington. So what are the issues you're here to decide with regards to Counts 10 and 11? Well, did Mr. Cardon attempt to induce Ms. Whiteman to testify falsely or withhold testimony? Did Mr. Cardon have reason to believe Ms. Whiteman would be called as a witness in an official proceeding and then those same two questions in regard to Mr. Temple?

RP (June 15, 2022) at 476-77 (emphasis added). The prosecutor went on to discuss the evidence supporting the tampering charges.

### B. Prosecutorial Misconduct

To "'establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial, considering context of the entire record and the circumstances at trial.'" *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021) (internal quotation marks omitted) (quoting *State v. Magers*, 164 Wn.2d 174, 189 P.3d 126 (2008)). "Prosecutors have 'wide latitude' in closing argument, but their argument must be based on the evidence and must not misstate the applicable law." *State v. Crossguns*, 199 Wn.2d 282, 296-97, 505 P.3d 529 (2022) (quoting *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012)). It is the defendant's burden to prove that the conduct was improper and that it caused prejudice. *Id.* at 297.

Where a defendant fails to object to misconduct during trial, a heightened standard applies. *State v. Loughbom*, 196 Wn.2d 64, 74, 470 P.3d 499 (2020). In these situations, the defendant must show that the misconduct was flagrant and ill-intentioned, and that the resulting prejudice was incurable. *Crossguns*, 199 Wn.2d at 299. This requires the

defendant to show that "'no curative instruction would have obviated any prejudicial effect on the jury' and that 'the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict.'" *Crossguns*, 199 Wn.2d at 299 (internal quotation marks omitted) (quoting *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012)). "We review allegedly improper comments in the [broader] context of the entire argument," the issues in the case, and the jury instructions. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

"Generally, a prosecutor cannot comment on the lack of defense evidence because the defendant has no duty to present evidence." *State v. Cheatam*, 150 Wn.2d 626, 652, 81 P.3d 830 (2003). "[B]ecause the State bears the burden of proving its case beyond a reasonable doubt, and the defendant bears no burden," it is misconduct for the prosecutor to make an argument that "shifts the burden to the defense." *Emery*, 174 Wn.2d at 760. "A prosecutor may commit misconduct if [they] mention[ ] in closing argument that the defense did not present witnesses or explain the factual basis of the charges or if [the prosecutor ] states that the jury should find the defendant guilty simply because [the defendant] did not present evidence to support [the] defense theory." *State v. Jackson*, 150 Wn. App. 877, 885, 209 P.3d 553 (2009). Moreover, a prosecutor violates a defendant's Fifth Amendment right to the United States Constitution when the "prosecutor's statement was of such character that the jury would naturally and

necessarily accept it as a comment on the defendant's failure to testify." *State v.*

*Crawford*, 21 Wn. App. 146, 152, 584 P.2d 442 (1978).[1]

However, "the mere mention that defense evidence is lacking does not constitute

prosecutorial misconduct or shift the burden of proof to the defense." *Jackson*, 150 Wn.

App. at 885-86. "Comments by a prosecutor that certain testimony is undenied are not

improper as long as there is no reference to who may be in a position to deny it." *State v.*

*Brett*, 126 Wn.2d 136, 176, 892 P.2d 29 (1995). Likewise, "[p]rosecutors may also

comment on the defendant's failure to present evidence on a particular issue if persons

other than the accused could have testified as to that issue." *Id*.

Here, the prosecutor stated that there was no contrary evidence offered to dispute

that Cardon's phone calls originated in Spokane County, the date ranges of the phone

calls supporting the two witness tampering charges, and that Cardon had two prior

convictions for violation of no-contact orders. The comments do not suggest that Cardon

was the only person who could deny these allegations.

To the extent that these comments suggest Cardon's failure to produce evidence,

the comments were not improper because persons other than Cardon could have testified

---

[1] Drawing attention to the defendant's failure to testify is constitutional error. *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). If a prosecutor commits this type of misconduct, then "'it is subject to the stricter standard of constitutional harmless error.'" *State v. French*, 101 Wn. App. 380, 386, 4 P.3d 857 (2000) (quoting *State v. Traweek*, 43 Wn. App. 99, 108, 715 P.2d 1148 (1986)).

to the issues. Several law enforcement officers could testify whether Cardon's phone calls from the Spokane County jail originated from Spokane County. Similarly, any number of witnesses could provide testimony on the dates of the recorded phone calls Cardon made from jail. Finally, Cardon's criminal history was established not only by judgment and sentences entered as exhibits, but by the testimony of two witnesses the Spokane police officer and the Airway Heights Corporal, who both testified that they had reviewed Cardon's criminal history and it included two prior convictions for violating a no-contact order.

Despite the existence of other witnesses Cardon argues that the only way to *refute* the State's evidence was to present witnesses on his own behalf and testify himself. But this is not the standard. Since the record supports that witnesses other than Cardon could have testified to these facts, it was not improper for the State to point out that no contrary evidence was offered to dispute the evidence on these elements.

*C. Ineffective Assistance of Counsel*

Alternatively, Cardon argues that his attorney was ineffective for failing to object to the alleged misconduct during closing arguments. However, since we should conclude that no misconduct took place, this argument necessarily fails.

Criminal defendants have a constitutional "right to effective assistance of counsel." *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021); *see also* U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. When reviewing a claim of ineffective

10

assistance of counsel, we start with a strong presumption that counsel's performance was effective. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We review claims of ineffective assistance of counsel de novo. *Vazquez*, 198 Wn.2d at 249.

Washington courts follow the *Strickland*[2] standard "for reversal of criminal convictions based on ineffective assistance of counsel." *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). A defendant bears the burden of showing that (1) his counsel's performance fell "'below an objective standard of reasonableness based on consideration of all the circumstances'" and, if so, (2) "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (quoting *McFarland*, 127 Wn.2d at 334-35). If either prong is not satisfied, the inquiry ends. *Id*.

With regard to the first prong, "[w]hen counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Id*. To show deficient performance, "the defendant must [demonstrate from] the record the absence of legitimate strategic or tactical reason" for counsel's conduct. *McFarland*, 127 Wn.2d at 336. "[W]hether to object [or not] is a classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). In the context of objections, Washington courts presume "that the failure to object was the product of legitimate trial strategy."

---

[2] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

*State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). Likewise, defense counsel's failure to object during the prosecutor's closing argument generally does "not constitute deficient performance because lawyers 'do not commonly object during closing argument "absent egregious misstatements."'" *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 721, 327 P.3d 660 (2014) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 717, 101 P.3d 1 (2004)).

In this case, Cardon does not meet the first prong necessary to establish his ineffective assistance of counsel claim. As previously discussed, the prosecutor's statements during closing arguments did not amount to misconduct, nor were they egregious misstatements. Consequently, Cardon's trial counsel cannot be deemed deficient for failing to object to statements that were unobjectionable. Since Cardon has not established the first prong of his ineffective assistance claim, the inquiry concludes here.

2. INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO REQUEST LIMITING INSTRUCTION

In order to prove the charges of felony violation of a domestic violence no-contact order, the State was required to prove that Cardon had two prior convictions for violating a no-contact order. On appeal, Cardon contends his trial counsel was ineffective for failing to request a limiting instruction pertaining to the admissibility of exhibits admitted

12

by the State to prove these predicate convictions. We conclude that Cardon has failed to

show his attorney's performance was deficient.

### A.  Additional Background

To convict Cardon on the eight counts of felony violation of a no-contact order,

the jury was instructed that it needed to find that the State proved the following elements

beyond a reasonable doubt:

> (1) That on or about [the date of the alleged violation], there existed a no-contact order applicable to the defendant;
> (2) That the defendant knew of the existence of this order;
> (3) That on or about said date, the defendant knowingly violated a provision of this order;
> (4) That the defendant has twice been previously convicted for violating the provisions of a court order; and
> (5) That the defendant's acts occurred in the State of Washington.

CP at 132-38, 142.

The State also moved to introduce two judgment and sentences as evidence of

Cardon's prior convictions for violation of a no-contact order.  The first judgment and

sentence contained the notation "NCO violation" under the list of charges, and two "DV"

notations within the costs and conditions sections.  Ex. P-3.  The second judgment and

sentence contained the notation "NCO Violation DV" and "DV Pled and Proved" in the

list of charges, and one reference to a "DV Advocacy Fee" in the cost section.  Ex. P-4.

Defense counsel did not request to redact these exhibits and did not request a limiting

instruction. Evidence of Cardon's prior convictions also came in through testimony by involved police officers.

### B. Analysis

Cardon asserts that defense counsel's failure to request a limiting instruction for the two judgment and sentences amounted to deficient performance. He contends that without such an instruction, the jury could improperly infer his propensity to commit the crimes for which he was on trial for. Conversely, the State argues that this omission should be presumed a tactical decision by counsel to avoid reemphasizing potentially prejudicial evidence.

As we noted above, a defendant claiming ineffective assistance of counsel must demonstrate deficient performance and prejudice. *See Grier*, 171 Wn.2d at 32-35. To show deficient performance, "a defendant must overcome a strong presumption that counsel's performance was reasonable[, and] [w]hen counsel's conduct can be characterized as a legitimate trial strategy, performance will not be deemed deficient." *State v. Breitung*, 173 Wn.2d 393, 398, 267 P.3d 1012 (2011). "To rebut this presumption, the defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 42 (alteration in original) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 101 P.3d 80 (2004)).

14

In cases where defense counsel does not request a limiting instruction, courts generally assume this is a tactical decision aimed at minimizing undue attention to prejudicial information. *See*, *e.g.*, *State v. Humphries*, 181 Wn.2d 708, 720, 336 P.3d 1121 (2014); *State v. Barragan*, 102 Wn. App. 754, 762, 9 P.3d 942 (2000); *State v. Yarbrough*, 151 Wn. App. 66, 90-91, 210 P.3d 1029 (2009); *State v. Price*, 126 Wn. App. 617, 649, 109 P.3d 27 (2005).

We reject Cardon's argument that the presumption should not apply here because the evidence of his prior convictions had been introduced through two witnesses and two exhibits so there was no need to avoid reemphasis of this evidence. The question is not whether it would have been better to request a limiting instruction. Instead, Cardon has the burden of showing that his attorney's failure to do so "fell below an objective standard of reasonableness." *Humphries*, 181 Wn.2d at 720. Nothing in the record suggests that the failure to request a limiting instruction was anything other than a strategic decision. Cardon fails to establish that his attorney's performance was deficient.

3. RIGHT OF ALLOCUTION

Cardon contends the trial court erred by sentencing him before allowing him to allocute. We decline to review this issue as unpreserved.

*A. Additional Background—Sentencing*

At sentencing, defense counsel requested the court impose a Mental Health Sentencing Alternative (MHSA) because Cardon suffered from long-term substance

15

abuse and various untreated mental health conditions. Alternatively, defense counsel

requested an exceptional sentence downward, arguing that Whiteman was the initiator of

the contact or a willing participant.

The prosecutor opposed Cardon's requests, arguing that he failed to show that he

suffered from a serious mental illness that resulted in serious functional impairment so as

to justify an MHSA, and that the fact that Whiteman may have initiated the contact with

Cardon had no bearing on the assault of Temple.The prosecutor requested a high-end

standard range sentence for the second degree assault conviction, with high-end

concurrent sentences for the other convictions.

The court asked defense counsel about whether Cardon suffered from a serious

mental health issue as required under the MHSA statute, RCW 9.94A.695. Defense

counsel responded that the statute did not clearly define "serious mental health issue," but

argued that there was a nexus between Cardon's crimes and his recently diagnosed

Bipolar disorder and other mental health issues. RP (Aug. 23, 2022) at 595-98. After

defense counsel finished speaking, Cardon's mother spoke on behalf of her son in favor

of the MHSA, outlining his history of mental health diagnoses and substance abuse

issues.

After Cardon's mother spoke, the court began to express its position on the various

sentencing requests. After the court discussed the request for an MHSA and an

exceptional sentence, Cardon's attorney interjected, asking if the court was going to give

Cardon a chance to speak before making her decision.Cardon then spoke, apologizing for his actions, requesting the MHSA, and promising to take his mental health seriously.

After Cardon spoke, the court stated, "I just want to reconsider my comments in light of Mr. Cardon's statements, so just a moment." RP (Aug. 23, 2022) at 623. The court then explained with regard to the requested MHSA:

> So I want to address the mental health sentencing alternative in light of Mr. Cardon's statement, and he does have a right of allocution, and I should have heard that sooner. I maintain my previous statements . . . .

RP (Aug. 23, 2022) at 623. The court further explained that it heard nothing in Cardon's allocution that would convince the court that Whiteman's willing participation was a basis for an exceptional sentence downward.

The court acknowledged that the standard range for the second degree assault conviction with the deadly weapon enhancement was 75 to 96 months, and ultimately announced that it would sentence Cardon to the low end 75 months. As evidenced by the final judgments and sentences, the court ultimately sentenced Cardon to serve 63 months of confinement for the second degree assault conviction with an additional 12 months for the deadly weapon enhancement, totaling 75 months. CP at 315. The court ordered Cardon to serve 60 months for each of the remaining counts to run concurrently with the sentence for the assault. The court also imposed 18 months of community custody.

17

B. *Legal Principles*

In Washington, a criminal defendant has the statutory right to allocute during sentencing. *State v. Canfield*, 154 Wn.2d 698, 703-04, 116 P.3d 391 (2005) (alteration in original) (quoting RCW 9.94A.500(1) (during a sentencing hearing, "'[t]he court shall . . . allow arguments from . . . the offender . . . as to the sentence to be imposed.'")). "Allocution is the right of a criminal defendant to make a personal argument or statement to the court before the pronouncement of sentence. It is the defendant's opportunity to plead for mercy and present any information in mitigation of sentence." *Id.* at 701.

When analyzing the former version of this statute, our Supreme Court recognized that the statutory language "does not specify when the court must allow the argument so long as it is made in the sentencing hearing at some time prior to imposition of sentence." *In re Pers. Restraint of Echeverria*, 141 Wn.2d 323, 336, 6 P.3d 573 (2000). "The statute does not require that [the defendant's] 'argument' be made *immediately* prior to imposition of sentence." *Id*. at 335.

Generally, a trial court's failure "'to solicit a defendant's statement in allocution constitutes legal error.'" *State v. Hatchie*, 161 Wn.2d 390, 405, 166 P.3d 698 (2007) (quoting *State v. Hughes*, 154 Wn.2d 118, 153, 110 P.3d 192 (2005)). The Courts of Appeal are split on whether any error is subject to harmless error analysis. *See Id*. at 406 n.11. Regardless, where the defendant fails to object to the lack of allocution before the court announces its sentence, the error is waived. *Hatchie*, 161 Wn.2d at 405-06.

18

The State contends that Cardon failed to preserve this issue because defense counsel failed to raise a clear and timely objection during sentencing. We agree. In *Hatchie*, the trial court "announced he was 'ready to rule' and would impose a 55 month sentence unless Hatchie had something else to say." *Id*. at 394. When neither defense counsel nor the defendant said anything, the prosecutor suggested that Hatchie should be asked if he wanted to allocute. The Supreme Court recognized that when Hatchie did allocute, he was doing so "from the disadvantaged position of already hearing the court's tentative sentence." *Id*. at 405-06. Nevertheless, the court concluded that any error was waived by the lack of objection. *Id*. at 406. In this case, defense counsel's interjection did not rise to the level of a clear objection.

We decline to address the unpreserved issue on allocution.

4. NO-CONTACT ORDER TERM

Cardon challenges the 10-year domestic violence no-contact order protecting Whiteman that was imposed as a condition of his sentence. He contends that the term of the no-contact order impermissibly exceeded the five-year statutory maximum for the underlying offenses against her. We agree.

As a threshold issue, the State contends we should decline review of this issue because it is not a manifest constitutional error. RAP 2.5(a)(3). We disagree with this argument. As Cardon points out in his reply brief, "challenges to illegal or erroneous sentences, including the imposition of a penalty that does not comply with [the]

sentencing statutes, can be raised for the first time on appeal." Appellant's Reply Br. at

11 (quoting *State v. Duran*, 16 Wn. App. 2d 583, 587, 481 P.3d 623 (2021)). Given that

Cardon challenges the legality of the post-conviction no-contact order in question, this

issue was not waived for lack of objection.

Cardon was convicted on eight counts of felony violation of a domestic violence

no-contact order and one count of tampering with a witness against Whiteman. As

charged, both offenses are class C felonies under former RCW 26.50.110(5) (2019)

(felony violation of no-contact order); RCW 9A.72.120(2) (tampering with a witness).

The maximum allowable sentence for a class C felony is five years. RCW

9A.20.021(1)(c).

Cardon was also convicted of second degree assault against Temple, a class B

felony. The maximum allowable sentence for a class B felony is 10 years. RCW

9A.20.021(1)(b).

The 10-year no-contact order protecting Whiteman was issued pursuant to RCW

10.99.050. This statute provides in relevant part:

> An order issued pursuant to this section in conjunction with a felony
> sentence or juvenile disposition remains in effect for a fixed period of time
> determined by the court, which may not exceed the adult maximum
> sentence established in RCW 9A.20.021.

RCW 10.99.050(2)(d).

20

Despite the language of RCW 10.99.050(2)(d), the State relies on *Duran*, 16 Wn. App. 2d 583 to support the trial court's authority to impose a 10-year no-contact order as part of the sentence. The State contends that, because Whiteman was a witness to the assault on Temple, there is a sufficient connection to the crime with a statutory maximum of 10 years, justifying the length of the no-contact order.

In *Duran*, the defendant challenged the trial court's imposition of a 10-year no-contact order, which was based on the statutory maximum for burglary, arguing that it exceeded the five-year maximum for unlawful imprisonment, the crime involving the victim. 16 Wn. App. 2d at 586-87. The defendant claimed that the no-contact order should not exceed the five-year maximum sentence for unlawful imprisonment. *Id.*

The *Duran* court, analyzed the issue in part under RCW 9.94A.505(9) and *State v. Armendariz*, 160 Wn.2d 106, 108, 156 P.3d 201 (2007), which authorizes trial courts to impose crime-related punishments. *Duran*, 16 Wn. App. 2d at 586-89. The court upheld the no-contact order, reasoning that under those authorities, "the protected party for a no-contact order need not be the victim of the crime used to calculate the maximum duration of the order, so long as there was a sufficient connection to the crime." *Id.* at 589.

In *Armendariz*, the defendant was convicted of misdemeanor violation of a no-contact order and third degree assault against a police officer who arrived on the scene. Third degree assault is a class C felony with a maximum sentence of five years. RCW 9A.36.031(2), .20.021(1)(c). The sentencing court imposed a five-year no-contact order

prohibiting the defendant from contacting the victim of the no-contact order as a crime-

related prohibition pursuant to former RCW 9.94A.505(8) (2002). *Armendariz*, 160

Wn.2d at 118. The defendant argued that the no-contact order should be limited to the

term of his community custody. *Id*.

At the time *Armendariz* was decided, "[n]o provision of the SRA[3] directly

addresse[d] the maximum time period for which a trial court may impose a no-contact

order, or any crime-related prohibition, under RCW 9.94A.505(8)." *Id*. Ultimately, the

court concluded that the no-contact order was related to the crime of third degree assault

and could be imposed for a term not to exceed the statutory maximum sentence for the

underlying crime. *Id*. at 119-20. Thus, the five-year no-contact order was not an abuse

of discretion. *Id*. at 120.

In this case, at sentencing, the State contended *Duran* provided the court authority

to enter the 10-year no-contact order against Whiteman as a crime-related prohibition.

However, the court imposed a domestic violence no-contact order under ch. 10.99 RCW.

On appeal, the State concedes:

> [I]t is debatable whether *Armendariz* and *Duran* extend to RCW
> 10.99.050 orders, and whether the plain language of RCW 10.99.050
> permits the duration of a post conviction domestic violence no-contact
> order to exceed the statutory maximum for any sentenced domestic
> violence offense so long as the duration does not exceed the statutory

---

[3] Sentencing Reform Act of 1981, ch. 9.94A RCW.

maximum for any offense included in the judgment and for which there is a sufficient connection between the crime and the protected party.

Br. of Resp't at 71. We agree and conclude that *Duran* and *Armendariz* do not apply to no-contact orders entered pursuant to RCW 10.99.050.

Because these cases do not apply, we turn to the language of the statute for answers. We review issues of statutory interpretation de novo. *State v. Pratt*, 196 Wn.2d 849, 852, 479 P.3d 680 (2021). "Our primary duty in statutory interpretation is to ascertain and carry out the legislature's intent." *Id.* at 853. In determining legislative intent, the first step is to determine if the statute is ambiguous. A statute is ambiguous if there is more than one reasonable interpretation. *State v. Evans*, 177 Wn.2d 186, 192-93, 298 P.3d 724 (2013). Only if it is ambiguous will we consider legislative history and policies to interpret a statute. *Id.* at 193.

The plain language of RCW 10.99.050 resolves this issue. Again, the statute is within chapter 10.99 RCW, titled "DOMESTIC VIOLENCE—OFFICIAL RESPONSE." The statute at issue, titled "Victim contact—Restriction, prohibition—Violation, penalties—Written order—Procedures—Notice of change" provides:

> (1) When a defendant is found guilty of a crime and a condition of the sentence restricts the defendant's ability to have contact with *the victim*, such condition shall be recorded and a written certified copy of that order shall be provided to the victim.
>
> . . . .

23

> (2)(d) An order issued pursuant to this section in conjunction with a felony sentence or juvenile disposition remains in effect for a fixed period of time determined by the court, which may not exceed *the adult maximum sentence* established in RCW 9A.20.021.

RCW 10.99.050 (emphasis added) (boldface omitted).

We conclude that "the adult maximum sentence" referenced in RCW 10.99.050(2)(d) means the maximum sentence for the domestic violence crime against the victim for which the domestic violence no-contact order is being entered. In addition to the clear reference to "domestic violence" in the chapter title, the plain language of subsection (1) refers to a no-contact order prohibiting contact with "the victim" being entered as a condition of the sentence. Moreover, the title of the statute refers to "victim contact." The use of the language "victim" indicates the legislature's decision to tie any no-contact order issued under subsection (2)(d) to the sentence related to the domestic violence crime against the victim being protected.

Under either RCW 9.94A.505 or RCW 10.99.050, a trial court has discretion to impose a no-contact order as a condition of the sentence. Here, the trial court abused its discretion by imposing a 10-year no-contact order under RCW 10.99.050(2)(d) for a crime with a maximum allowable sentence of five years. The imposition of a no-contact order is not ministerial but instead requires the court to exercise discretion. Moreover, in this case the no-contract order was part of the court's wholistic sentence for multiple

24

related crimes. As such, we remand for resentencing rather than remanding for correction.

We affirm Cardon's convictions but vacate his sentence and remand for de novo resentencing. *See Dunbar*, 27 Wn. App. 2d at 244 ("(U)nless the reviewing court restricts resentencing to narrow issues, any resentencing should be de novo.").

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Cooney, J.